PETE WALL PLUMBING COMPANY, INC. v. BRUCE HARRIS.

(Filed 23 March, 1966.)

**1. Trial § 21—**

On motion for involuntary nonsuit, defendant's evidence which is favorable to plaintiff or tends to clarify or explain plaintiff's evidence and which is not inconsistent therewith is properly considered, but defendant's evidence at variance with plaintiff's evidence or which tends to contradict or impeach testimony presented by plaintiff must be ignored.

**2. Election of Remedies § 4—**

If a party, with knowledge of his rights and of the facts and without imposition or fraud on the part of his adversary, prosecutes one remedial right to final judgment, he is thereafter barred from prosecuting an inconsistent remedial right, even though he fails to secure final satisfaction in the prior action.

**3. Same—Subcontractor recovering from owner on contract is barred thereafter from asserting his contract was with main contractor.**

Where a subcontractor, with knowledge of its rights and the facts in respect to identity of the person or persons with whom it has contracted, and without imposition or fraud in regard to such identity, elects to sue the owners of the premises to recover for labor and material furnished and to enforce its lien therefor on the theory that its contract was with the owner, and prosecutes such action to final judgment, such subcontractor is thereafter barred from resorting to the inconsistent remedy that its labor and materials were furnished under a contract with the main contractor or supervisor of construction. There being no contention or evidence of fraud in regard to the identity of the person or persons with whom the subcontractor dealt, the fact that the supervisor took a deed of trust prior to the beginning of the construction and misrepresented to the subcontractor that it had taken no security, cannot constitute such inequitable conduct as to preclude the supervisor from asserting the doctrine of election of remedies.

**4. Appeal and Error § 23—**

An assignment of error to the exclusion or admission of evidence must disclose the questions sought to be presented without the necessity of going beyond the assignment.

MOORE, J., not sitting.

PLESS, J., and RODMAN, E.J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Farthing, J.,* July 1965 Civil Session of GUILFORD, Greensboro Division.

Civil action instituted on 23 April 1963 in the Greensboro Municipal County Court, Civil Division, to recover from defendant the sum of $2,569.72 for heating and plumbing and extras furnished and installed, pursuant to an alleged contract entered into between plain-

tiff and defendant on 15 February 1961, in a house defendant as a general contractor built for Robert Alston on a lot owned by Robert Alston in the city of Burlington, which amount due by contract is unpaid, heard on appeal by defendant from a judgment in plaintiff's favor in the Greensboro Municipal County Court, Civil Division. Docketed and argued as Case No. 700 Fall Term 1965, and docketed as Case No. 689 Spring Term 1966.

Defendant in his answer filed 17 May 1963 denies that there was any contract between plaintiff and himself, and alleges that he was acting as agent for Robert Alston under authority given him by Alston, that the contract alleged in plaintiff's complaint was signed "Robert Alston by Bruce Harris," that any extras not mentioned in the contract were ordered without his (defendant's) knowledge, and that he is not indebted to plaintiff in any amount.

On 7 July 1963 plaintiff filed an amendment to its complaint, in which it alleges in substance: During the negotiations leading up to the consummation of the contract between it and defendant, defendant told it that he as a general contractor was to receive no payments from Alston until the house had been completely built, and when that had been done the house would be financed, and he (defendant) would be paid, and then he would pay plaintiff for its work, and that he (defendant) had taken no security for himself. That unknown to plaintiff defendant on 2 February 1961 had secured from Robert Alston and wife a deed of trust on the land on which the house was to be built by defendant, securing a note payable to defendant in the sum of $9,000, due five months after date, and duly recorded in Alamance County on 3 February 1961. The Alstons received no consideration for the execution and delivery of the note and deed of trust. The note and deed of trust were procured by defendant in pursuance of a scheme to defraud plaintiff and other subcontractors out of payment for the performance of their subcontracts; that such scheme contemplated the foreclosure of the deed of trust and a claim by defendant that he had no liability because such subcontracts were made directly with the Alstons. Robert Alston in February 1961 did the brick masonry for the house built on the premises of his wife and himself. That Robert Alston was completely unknown to plaintiff, except for defendant's statement to plaintiff that Alston was a Negro bricklayer who worked for him. That plaintiff had no contract of any kind with Alston. In pursuance of his fraudulent scheme defendant caused the deed of trust to be foreclosed on 11 July 1962 and at the foreclosure sale the defendant purchased the house and lot for the price of $10,760; that the final account of the trustee and foreclosure showed disbursements of the proceeds of sale as follows: to defendant $7,500, and to

J. C. Harris Lumber Company $3,260. As a consequence of the aforesaid fraudulent scheme of defendant, liens and judgments against the Alstons were filed by a dozen firms in the sum of about $18,000, representing labor and materials used in the construction of the residence, and all of these remain unpaid; that the statements made by defendant to plaintiff that he (defendant) had taken no security for the work he was doing in the construction of the house and that he would pay plaintiff for the performance of its contract when completed were known by defendant to be false, and were intended to deceive the plaintiff; and that the plaintiff relied upon such representations, was deceived thereby, and has suffered damage in the sum of $2,569.72.

On 5 August 1964 defendant filed an amended answer to the amended complaint, in which in substance he alleges: He denies that he had any contract with plaintiff to pay plaintiff for installing plumbing and heating in the Alston residence, and he denies that he told plaintiff he had taken no security for himself. Defendant entered into a contract with Robert Alston and wife to build a house for them. He was to furnish labor in the construction of their house and supervise its construction, for which he was to receive a fee of 10% of the costs incurred in the construction of the house. Robert Alston and wife were to pay for all labor and materials furnished to them by defendant, and as security gave him a deed of trust in the sum of $9,000, payable in five months. He denies that he said anything to give plaintiff any assurance that he would in any way be personally liable for any sums due plaintiff from Alston and wife. He admits the foreclosure sale under the deed of trust of the Alston premises, and alleges that he paid to himself $7,500 from the purchase price on the construction of the home under his contract, and paid to J. C. Harris Lumber Company, which had filed a first lien, the sum of $3,260. Robert Alston and wife advised him they were going to secure a loan from the North Carolina Mutual Life Insurance Company when the house was completed, and that they would then pay all bills for the construction of their house from the proceeds of the loan; that the insurance company did not make any loan to Alston and his wife, and for that reason Alston and his wife were unable to finance their house, which resulted in the foreclosure of the deed of trust by defendant. As a further defense defendant alleges in substance: Plaintiff never contacted defendant at any time concerning any amount due by him to plaintiff, and the first knowledge defendant had of the fact that plaintiff was seeking to hold him liable was when he was served with a copy of the summons and complaint in this action, more than two years after the alleged date of the contract. Plaintiff caused to be

filed in the office of the clerk of the Superior Court of Alamance County, North Carolina, a notice of lien against Robert Alston and his wife, which lien is recorded in Lien Book 4, at page 560, wherein plaintiff alleged as follows: "The material and labor on account of which this lien is claimed was furnished to and performed for the said owners by the said claimant under and pursuant to the terms of two entire and indivisible contracts made and entered into by the said claimant and the owners on the 15th day of February, 1961, by the terms whereof, the said claimant furnished said materials and performed certain labor in the erection of the building upon the lands on which the above mentioned building is located, and the said owners contracted and agreed to pay for the same the sum set out in Exhibit 'A' hereto attached and made a part of this notice of lien." In consequence of filing said lien plaintiff sued Robert Alston and wife in the Superior Court of Alamance County, North Carolina, and recovered judgment against them for the sum of $2,937.43; the said complaint alleged a contract with the Alstons, and at no time did plaintiff ever allege that defendant was indebted to plaintiff in any sum. Defendant again specifically denies that he is indebted to plaintiff in any sum, but even if he were, which is again denied, plaintiff has elected to sue Robert Alston and wife, wherein he alleges a specific contract with them, and defendant alleges that plaintiff has elected and that he is bound by his election, and that he is now estopped from making any claims against defendant, and defendant pleads this as a bar to any recovery by plaintiff in this action.

This is a summary of the testimony of J. O. "Pete" Wall on direct examination. His company, of which he is president, is the plaintiff, and it is in the heating and plumbing business. In February 1961 his company, by himself, and defendant entered into a contract by the terms of which his company was to furnish and install in a house being constructed for Robert Alston by defendant the heating for a price of $989, the plumbing for a price of $1,097, and that when the house was completed defendant would secure a loan on it and pay his company for its material and work done from the proceeds of the loan. At that time he did not know Robert Alston. Defendant told him Robert Alston was a brickmason, who worked for him. Defendant told him the house was a $28,000 job. As his company's work according to the contract neared completion, defendant asked his company to furnish some extras, an electric dishwasher, etc., which his company furnished and installed in the house at a cost of $483.72. His company finished the work on 4 October 1961, pursuant to its contract with defendant. Defendant has never paid his company anything for the furnishing and in-

stallation of the heating and plumbing and the extras in the house. In 1962 Robert Alston was living in the house. He never knew anything about defendant having a deed of trust on the house until after the instant action was instituted, when he was told of the deed of trust and its foreclosure by his present attorney of record.

This is a summary of Pete Wall's testimony on cross-examination: The defendant told him he was building a house for Robert Alston; he never told him he was an agent for Robert Alston. Neither he nor any agent of his company had any conversation with Robert Alston about his company furnishing and installing any heating and plumbing in the house defendant was building for Alston. When shown a paper writing marked Defendant's Exhibit #2, he identified it as a copy from his company's files of a proposal dated 15 February 1961 and addressed by his company to "BUILDERS: Mr. & Mrs. Robert Alston — Burlington. Job and Location: Alston — Burlington," and stating "We agree to furnish and install a Forced Hot Air Heating System in the new residence that you are construction *(sic)* as follows: . . ." Then follows a description of the System, and the following: "PRICE: $989.00. Payment: 50% when roughed. Balance upon completion. J. O. "PETE" WALL PLUMBING Co. By..............................." His company sent the original of this proposal to Bruce Harris: it did not send it to Robert Alston. He is suing defendant in this lawsuit to recover $989 for the same work. When shown a paper writing marked Defendant's Exhibit #3, he identified it as a copy from his company's files of a proposal dated 15 February 1961 and addressed by his company to "BUILDERS: Mr. & Mrs. Robert Alston — Burlington. Job and Location: Alston — Burlington," and stating "We agree to furnish and install plumbing in the new residence that you are constructing as follows. . . . PRICE: $1,097.00." He testified: "This $1,097.00 is for the plumbing contract on the Robert Alston home, and is the same work I am suing for today." His corporation filed a notice of lien against Robert Alston and his wife on 4 October 1961 in Alamance County Superior Court. He was shown a document marked Defendant's Exhibit #4, which is a complaint in a civil action in the Superior Court of Alamance County brought by plaintiff here against Robert Alston and wife, Catherine D. Alston, as defendants. As to this paper marked Defendant's Exhibit #4, he testified as follows:

> "As to Defendant's Exhibit #4, which you hand me and ask me if it is not a duplicate of what I signed on September 4, 1962, I really don't know — honestly — if I go to you as my attorney I trust you, I depend on you to protect me in any way

you see fit, that's the reason I would call on you to begin with. The instrument you hand me fits our job and the materials, but I do not recall ever seeing this. I went to Attorney Moseley I believe, about bringing a lawsuit against Robert Alston. As to whether I asked my attorney to prepare a notice of lien against Robert Alston, and went to the attorney's office and signed any papers he prepared for me, I just don't recall. The best I recall I explained the situation to him the best I knew it at that time and the best that I know now, and as I told you a while ago I left it entirely up to him to do what was supposed to be done about it. As to whether or not I deny signing papers he prepared for me, any paper that I find my signature on I will say that I did sign it and I haven't said that as yet this morning. As to whether I told him what to put into these papers, I did not — that's the reason I called him. I probably showed him my contract. I don't know as I did, I must have had some conversation with him. I did hire Mr. Moseley to file a lawsuit. I do not know whether we got a judgment on that lawsuit or not. I do not have a copy of the judgment in my files.

"The other exhibits attached to Defendant's Exhibit #4 are familiar to me and I recognize all the materials and I would say they are copies of our invoices, and I suppose they were furnished to our attorney for attachment to this lawsuit in Alamance County. As to Defendant's Exhibit #6, entitled 'Judgment', which you hand me, its a possibility I have seen this paper but I cannot recall. As to the total figure on the judgment, I suppose that figure would total up exactly what we have here. I'm not denying that I didn't take him those figures now. I sued Bruce Harris on April 23, 1963, and employed Mr. Rockwell to bring this suit for the identical thing for which I am now suing *(sic)* Mr. Alston."

Before closing its case, plaintiff announced in open court that it is proceeding in this action on the basis of a contract between itself and Bruce Harris for the furnishing of plumbing and heating work which it alleges it has performed and for which it has not been paid; that although allegations in the complaint may constitute an action in fraud and deceit, the plaintiff waives the tort and proceeds on the contract in this case.

This is a brief summary of the testimony of defendant Bruce Harris: He never at any time entered into any contract with plaintiff concerning the Alston job. He was never billed for the Alston job, and first learned that plaintiff was trying to hold him responsible for this job when the deputy sheriff served papers on him in

this case several years later. He never contracted to purchase any material that went into the Alston home other than material that came from Harris Lumber Company. The amount of the bill of the Harris Lumber Company was $5,316.70. He was supervisor of the construction of the Alston home; what he means by supervision was looking after it, seeing that things were put in the right places according to the specifications. For that he was to get a fee of 10% of the costs of the construction.

This is a summary of the testimony of Robert Alston for defendant: In February 1961 he had started the brick work on the foundation of a house he was building for himself and his wife. Pete Wall came up and told him Bruce Harris (defendant) told him that he (Alston) was building a house and that he (Pete Wall) would like to get a contract on the plumbing. He told Wall he would let him do it if he would give him the right kind of price. Wall stayed about forty-five minutes that day. He never saw Wall again though he talked to him over the telephone. When he found out what Wall's bid was later from defendant, he told defendant to sign a contract for him. He was sued by plaintiff. He recognized a copy of the complaint. He did not file any answer to it. He received a copy of the notice of lien on his property from plaintiff through the mail. The plaintiff has never been paid its bill for $2,937.43 by him. He lives in the house now.

The defendant offered in evidence, among other documents, a document marked Defendant's Exhibit #4, which is a complaint, with exhibits attached to it, filed by Pete Wall Plumbing Company as plaintiff against Robert Alston and wife, Catherine D. Alston, as defendants, in the Superior Court of Alamance County. This complaint alleges in substance, except when quoted:

"3.   That on or about the 15th of February, 1961, the defendants entered into an entire and indivisible contract with the plaintiff, whereby the plaintiff was to furnish certain materials and perform certain labor for the defendants in connection with the construction of a dwelling house upon certain land belonging to the defendants and hereinafter described; that in accordance with said contract plaintiff furnished to the defendants certain materials and performed certain labor for which the defendants agreed to pay the sum of $2,937.43, as per itemized statement attached hereto and marked 'Exhibit A'; that said materials were furnished to the defendants between February 28, 1961, and October 4, 1961.

"4.   That said materials were furnished and labor performed in the construction of a dwelling house upon a certain parcel of

land in Burlington Township, Alamance County, North Carolina, then and now owned by the defendants, and described as follows: [Description omitted.]

"5. That the defendants failed, neglected and refused to pay for said materials and labor; that pursuant to the constitution and laws of the State of North Carolina providing for laborers' and materialmen's liens, the plaintiff filed notice of lien in the office of the Clerk of the Superior Court of Alamance County on March 5, 1961, said notice of lien being recorded in Lien Docket 4, page 560; that a copy of said notice of lien is attached hereto as 'Exhibit B'; that said notice of lien was filed within six months from the last day upon which said materials were furnished."

That there is now due plaintiff by defendants the sum of $2,937.43 with interest, which is unpaid. Wherefore, plaintiff prays for judgment against defendants for the sum of $2,937.43, with interest until paid; that this judgment be declared a lien on the property described in the complaint from and after 28 February 1961. It purports to be signed by Moseley and Edwards by J. Halbert Conoly, attorneys for plaintiff, and it purports to be verified on 4 September 1962 by J. O. Wall, who states he is president of plaintiff. Attached to this complaint marked Exhibit A is an invoice from plaintiff addressed to Robert Alston setting out with particularity the plumbing and heating materials furnished and installed by it in the Alston house. Attached to this complaint marked Defendant's Exhibit #5 — "Exhibit B" is a notice filed in the office of the clerk of the Superior Court of Alamance County that Pete Wall Plumbing Company, Inc., is claiming a laborer's and materialman's lien against defendants Robert Alston and wife in the amount of $2,-937.43 upon the property described in the complaint, which is also described in the notice, for the heating and plumbing system placed in the Alston house by plaintiff. This elaborate notice is in due form and we omit the details. Defendants also offered in evidence as Defendant's Exhibit #6 a copy of a judgment rendered in the Superior Court of Alamance County on 26 March 1963 in the case of Pete Wall Plumbing Company, Inc., against Robert Alston and wife, Catherine D. Alston, in which case defendants filed no answer. This judgment orders and decrees that plaintiff have and recover from defendants the sum of $2,937.43 with interest until paid, and that said judgment is hereby declared to be a lien against the property described in plaintiff's complaint, and that said lien against said property dates from the 28th day of February, the date upon which

plaintiff first furnished labor and material under the indivisible contract heretofore referred to in the complaint.

At the close of all the evidence, upon motion of defendant, the court entered judgment of compulsory nonsuit, dismissing plaintiff's action and taxing it with the costs. From this judgment plaintiff appeals.

*Harry Rockwell for plaintiff appellant.*
*W. L. Shoffner and Spencer B. Ennis for defendant appellee.*

PARKER, C.J. Plaintiff and defendant offered evidence. "In ruling upon a motion for an involuntary judgment of nonsuit under the statute after all the evidence on both sides is in, the court may consider so much of the defendant's testimony as is favorable to the plaintiff or tends to clarify or explain evidence offered by the plaintiff not inconsistent therewith; but it must ignore that which tends to establish another and different state of facts or which tends to contradict or impeach the testimony presented by the plaintiff." *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307.

Considering plaintiff's evidence in the light most favorable to it, and considering only so much of defendant's evidence as tends to clarify or explain evidence offered by plaintiff not inconsistent therewith, these facts clearly appear: Plaintiff furnished and installed in a new house being constructed on land owned by Robert Alston and wife, Catherine D. Alston, a hot air heating system and plumbing and extras, and when the cost of this material and labor was not paid for, it filed notice of a laborer's and materialman's lien on the premises, and instituted an action against Robert Alston and wife, Catherine D. Alston, in the Superior Court of Alamance County to recover from them the cost of such labor and material furnished in the amount of $2,937.43 with interest, and to have the judgment declared a lien on the property described in its complaint, upon the theory, as alleged in its complaint:

"3. That on or about the 15th of February, 1961, the defendants [Robert Alston and wife, Catherine D. Alston] entered into an entire and indivisible contract with the plaintiff, whereby the plaintiff was to furnish certain materials and perform certain labor for the defendants in connection with the construction of a dwelling house upon certain land belonging to the defendants and hereinafter described; that in accordance with said contract plaintiff furnished to the defendants certain materials and performed certain labor for which the defendants agreed to pay the sum of $2,937.43, as per itemized statement

attached hereto and marked 'Exhibit A'; that said materials were furnished to the defendants between February 28, 1961, and October 4, 1961."

Plaintiff employed a reputable and able lawyer, Mr. Moseley, to institute this suit. Defendants Alston filed no answer. Plaintiff prosecuted this action to judgment, and the judgment entered therein by the Superior Court of Alamance County orders and adjudges as follows:

"1. That the plaintiff have and recover of the defendants the sum of Two Thousand Nine Hundred Thirty-seven and 43/100 Dollars ($2,937.43) with interest thereon from the 4th day of October, 1961, until paid;

"2. That said judgment be and the same is hereby declared to be a lien against the property described in plaintiff's complaint and that said lien against said property dates from the 28th day of February, 1961, and the date upon which the plaintiff first furnished labor and materials under the indivisible contract heretofore referred to."

When plaintiff employed Mr. Moseley to institute this action against Robert Alston and wife, it was in possession of every available fact out of which any implication was drawable as to the person or persons with whom it contracted to furnish the material and do this work. There is no evidence at all that any fraud or imposition was perpetrated on plaintiff by anyone in respect to the identity of the person or persons with whom it contracted. Plaintiff deliberately took the position that its contract was with Robert Alston and wife.

When plaintiff did not collect its judgment against the Alstons, and without discovering anything thereafter in respect to the identity of the person or persons with whom it contracted, it employed different counsel and instituted the instant action against defendant Harris on the theory, as alleged in the complaint in the instant case, that it and defendant Bruce Harris "entered into a contract whereby the plaintiff was to install the plumbing and heating in a residence being constructed by the defendant for one Robert Alston. . . ." Pete Wall, president of plaintiff, testified in the instant case: "I sued Bruce Harris on April 23, 1963, and employed Mr. Rockwell to bring this suit for the identical thing for which I am now suing (sic) Mr. Alston." It seems manifest that this sentence contains a typographical error and that what the defendant testified to is, "I sued Bruce Harris on April 23, 1963, and employed Mr. Rockwell to bring this suit for the identical thing for which I sued Mr. Alston."

In *Pumps, Inc. v. Woolworth Co.*, 220 N.C. 499, 17 S.E. 2d 639, the Court said: "Furthermore, where a claimant elects to file notice of a lien on the theory that material was furnished to a subcontractor he is estopped under the doctrine of election of remedies from thereafter asserting that such material was sold direct to the owner. *Lumber Co. v. Perry*, 212 N.C. 713, 194 S.E. 475."

In *Lumber Co. v. Perry*, 212 N.C. 713, 194 S.E. 475, the second headnote in our Reports states:

> "Conceding that plaintiff's evidence established that plaintiff materialman entered into a contract for the sale of materials direct to defendant owner, the evidence also established that after plaintiff learned that the dwelling had been constructed under contract for a turnkey job, plaintiff gave notice as a subcontractor and thereby· asserted a lien on the property under C.S. 2437. *Held:* By electing to assert a lien as a subcontractor under C.S. 2437, plaintiff is estopped from thereafter asserting a lien as a contractor or material furnisher under C.S. 2433, and plaintiff is entitled to recover of defendant only the amount due the contractor by the owner on the date notice was given as a subcontractor or material furnisher to the contractor."

The case of *Scholl v. Baynes*, 125 Misc. 114, 210 N.Y.S. 153, affirmed 220 App. Div. 755, 222 N.Y.S. 894, is apposite. In that case the Court held that plaintiffs, who sued wife for work performed on the theory that she was the principal, with the knowledge of every available fact from which any implication was drawable, could not, after failing to collect on judgment, sue husband on the theory that wife acted as his agent. In 210 N.Y.S. 153 the court said: "It seems to a majority of this court to be quite plain that, under the well-established doctrine of election applicable to such cases as this, the plaintiffs conclusively staked their hopes and rested their chances upon the claim that the wife contracted as principal, and not as agent."

It seems to be the general rule that where a party, with knowledge of his rights and of the facts and without imposition or fraud on the part of his adversary, prosecutes one remedial right to judgment or decree, whether the judgment or decree is for or against plaintiff, such prosecution of the action to judgment or decree is a decisive act which constitutes a conclusive election, barring the subsequent prosecution of inconsistent remedial rights. It has been held that the rule is the same, even though plaintiff fails to secure full satisfaction by means of the remedy adopted. *United States v.*

*Oregon Lumber Co.,* 260 U.S. 290, 67 L. Ed. 261; 28 C.J.S., Election of Remedies, § 14; 18 Am. Jur., Election of Remedies, § 20.

Plaintiff, with knowledge of its rights and of the facts in respect to the identity of the person or persons with whom it contracted, and without imposition or fraud on the part of its adversary in respect to the identity of the person or persons with whom it contracted, having elected to institute a civil action against Robert Alston and his wife to recover for labor and materials furnished and installed in a new house being constructed on their land and to enforce a laborer's and materialman's lien on the house, on the theory that such labor and material were furnished and installed pursuant to a contract between it and Robert Alston and his wife, and having prosecuted such action to a judgment in its favor for all it prayed for in its complaint against the Alstons, such action by plaintiff constitutes a conclusive election of remedy barring plaintiff from thereafter resorting to the inconsistent remedy that such labor and material were furnished under a contract with Bruce Harris, defendant here.

Plaintiff contends that defendant, by taking a deed of trust from the Alstons securing their note to him and foreclosing the deed of trust, and buying in the property and from the proceeds paying himself and Harris Lumber Company and leaving it with nothing, and by representing to it that he (Bruce Harris) was taking no security for himself, was guilty of inequitable conduct which bars him from asking the aid of a court of equity to bar its right to maintain its instant action upon the doctrine of election of remedies. Even if Harris is guilty of inequitable conduct as contended by plaintiff, as above stated, plaintiff has no evidence that Harris was guilty of any inequitable conduct, or of any imposition or fraud, in respect to the identity of the person or persons with whom plaintiff contracted to furnish and install a hot air heating system and plumbing and extras in the new house being constructed on the Alstons' premises. Plaintiff's contention is untenable.

Plaintiff's assignments of error to the exclusion and admission of evidence fail to comply with our Rules, because they, and all of them, do not disclose the questions sought to be presented without the necessity of going beyond the assignments of error themselves to the record, and such failure to comply with the Rules does not present the exceptions for review. *Balint v. Grayson,* 256 N.C. 490, 124 S.E. 2d 364. However, we have gone through the record, and

prejudicial error does not appear in the admission and exclusion of evidence.

The judgment of compulsory nonsuit below is
Affirmed.

MOORE, J., not sitting.

PLESS, J., and RODMAN, E.J., took no part in the consideration or decision of this case.