CORNELIA TAYLOR LONG v. GEORGE G. HONEYCUTT.

(Filed 26 August, 1966.)

**1. Reference § 3—**

Where the complaint seeks to recover the aggregate amount of loans and advancements made by plaintiff to a corporation and other payments made by plaintiff for the benefit of the corporation, which obligations plaintiff alleged that defendant had personally assumed by contract in acquiring plaintiff's stock in the corporation, *held,* the ordering of a compulsory reference by the court in its discretion will be upheld, since it cannot be ascertained as a matter of law from the pleadings that plaintiff's cause of action did not require the consideration of a "long account." G.S. 1-189.

**2. Appeal and Error § 19—**

An assignment of error which fails to disclose the question sought to be presented without the necessity of going beyond the assignment itself will not be considered.

**3. Appeal and Error § 41—**

The exclusion of evidence will not justify a new trial when the record discloses that appellant's cause would be in no way benefited had such evidence been admitted.

**4. Husband and Wife § 3—**

When there is nothing in the record to show that the husband was the agent of the wife or had authority to act for her at the conference in question, and the record discloses that the wife was not present at the conference, statements made at such conference, offered as tending to show the intentions of the parties with respect to the contract sued on by the wife, are not competent for the purpose of showing the wife's understanding and intent in regard to the contract.

**5. Appeal and Error § 35—**

Where the charge of the court is not set forth in the record, it will be presumed that the court correctly instructed the jury on every principle of law applicable to the facts.

PLESS, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Crissman, J.,* 22 March 1965 Session of FORSYTH. Docketed and argued as Case No. 446, Fall Term 1965. Docketed as Case No. 442, Spring Term 1966.

Civil action to recover the sum of $11,707.16 together with interest from 27 February 1959, allegedly due by contract and unpaid.

Plaintiff alleges in substance in her complaint: Plaintiff and defendant are residents of Forsyth County. Southeastern Beverage Company, Inc., hereafter called Southeastern, is a bankrupt corporation, the president of which at the time of its bankruptcy was the defendant. Prior to 27 February 1959, the majority of the outstanding stock of Southeastern was held by plaintiff, who from time to time extended loans to Southeastern, and paid various debts of Southeastern. On 27 February 1959, defendant desired to purchase the controlling interest in Southeastern, and accordingly entered into a contract with plaintiff whereby defendant obtained control of Southeastern. On 27 February 1959, plaintiff and defendant entered into a written contract, which provided, *inter alia,* as follows: "That George G. Honeycutt hereby agrees to assume and be responsible for the management of Southeastern Beverage Company, Inc., and also any and all obligations that may on this date be lawfully due by the said corporation." The obligations of Southeastern on 27 February 1959, which defendant agreed to assume, included $11,707.16 owing to plaintiff for loans made to Southeastern and for other payments made by plaintiff for the benefit of Southeastern. Plaintiff has made repeated demands on defendant for payment of his personal obligations as set forth in the written contract between the parties, both before and after Southeastern went

bankrupt under the defendant's management, but defendant has steadfastly refused to pay his debt.

Defendant admits in his answer that Southeastern is bankrupt, that he was president at the time of its bankruptcy, and admits that prior to 27 February 1959 the majority of the outstanding stock of Southeastern was owned or controlled by plaintiff. All other allegations of the complaint are denied, except the residence of the parties, which is admitted.

For a further answer and defense to plaintiff's complaint, defendant alleges in substance (We omit certain paragraphs which were stricken out by an order of Gambill, J., on motion of plaintiff, to which defendant excepted but has not carried his exception forward as an assignment of error.): During the early part of February 1959, plaintiff desired to withdraw from Southeastern as a substantial stockholder, and plaintiff and defendant reached an agreement whereby defendant agreed to save plaintiff harmless as to liability on two notes which had been executed by Southeastern, and on which plaintiff and defendant were endorsers. The said notes were in the total principal amount of $18,340 and were subsequently paid by defendant. As a part of the same agreement, plaintiff agreed to transfer her 24,000 shares of common "A" stock which she owned in Southeastern to defendant, and it was also agreed that plaintiff would retain or have issued to her a total of 10,000 shares of common "B" stock in Southeastern. On 27 February 1959 plaintiff and defendant entered into a written agreement. Said agreement contained the following language in paragraph 7 of the agreement: "That George G. Honeycutt hereby agrees that in the event the profits from any sale by him of his interest in the Southeastern Beverage Company, Incorporated, or the net earnings from the said business shall, at any time in the future, justify same, that he will reimburse CORNELIA TAYLOR LONG insofar as possible for her investment in the said company to the present time, the said amount being the sum of $28,807.00." Defendant is informed and believes and, therefore, alleges that the sum of $11,707.16 referred to in plaintiff's complaint as owing by him to her constituted her investment in Southeastern and was a part of the sum of $28,807.00 referred to in the above-mentioned contract between the parties.

For a second further answer and defense to plaintiff's complaint, defendant alleges in substance: The agreement of 27 February 1959 between the parties was also purportedly entered into by Major Cola Bottling Company, a corporation, hereafter called Major. Under the terms of the agreement and as a substantial portion of the consideration to defendant, Major agreed to transfer its 25,000 shares of common "B" stock in Southeastern to defendant. At

the time the agreement was entered into, Major was not a corporation, and insofar as the defendant is aware there was no corporation by that name, the reason being that this corporation had not done business for many years and its charter had been revoked by the Secretary of State of North Carolina; therefore, the agreement of Major, of which the plaintiff was the *alter ego*, was unenforceable, and the 25,000 shares of common "B" stock were never transferred to defendant.

For a third further answer and defense to plaintiff's action, defendant alleges in substance: If defendant did enter into a written agreement with the plaintiff under which he agreed to pay plaintiff the indebtedness alleged in the complaint, which is denied, then such agreement was the result of mutual mistake between plaintiff and defendant, and defendant pleads such mutual mistake in bar of plaintiff's right to recover anything of defendant under said agreement.

On 21 September 1962, defendant, pursuant to an order of the court, filed an amendment to his further answer and defense, reading as follows: "Following February 27, 1959, Southeastern Beverage Company, Inc., had no profits and no net earnings and finally was declared a bankrupt in 1960."

On 28 September 1964, the Honorable Frank M. Armstrong, judge presiding, entered an order of compulsory reference in substance as follows: It appearing to the court that the trial of issues of fact in this case will require the examination of a long account, it is ordered by the court on its own motion, as provided in G.S. 1-189, that all issues both of fact and of law in this action should be referred to Bannister R. Browder as referee, who will hear the evidence of both plaintiff and defendant and report his findings of fact and conclusions of law to the court not later than 28 October 1964. To this order plaintiff and defendant objected and excepted.

On 10 February 1965 the referee, Bannister R. Browder, filed his report with the court, which is as follows:

"1.  This is an action on a written contract wherein plaintiff sued defendant for the recovery of $11,707.16 alleging liability resting on the terms of the written contract. (Complaint and prayer for relief).

"2.  During the course of the hearing, plaintiff waived and/or reduced her claim by $160 leaving the alleged liability of the defendant at $11,547.16 (R. pp. 6, 7, 74, 75, 76, 89).

"3.  Plaintiff introduced into evidence as plaintiff's Exhibit No. 2 a contract executed by Cornelia Taylor Long, George G. Honeycutt and Ralph Long, President of the Major Cola Bot-

tling Company, dated February 27, 1959, and executed on March 3, 1959.

"4. Plaintiff introduced as plaintiff's Exhibit No. 1 forty-seven checks (R. p. 5) representing loans or advancements to Southeastern Beverage Company for various sums and amounts payable to Internal Revenue Service, Piedmont Natural Gas Co., Piedmont Tire Co., Chattanooga Glass Co., Laurens Glass Works, Cox Roofing Co., Southeastern Beverage Co., First National Bank and Cash, all being used to the benefit of Southeastern Beverage Company for numerous corporate expenses such as social security, taxes, payments, tires for the company trucks, bottles used in the corporation's business, rent for the premises occupied by the corporation, purchase of Sun Drop syrup used by the corporation, purchase of ginger ale, making up the payroll for the corporation, crowns for bottled drinks, cartons, license tags for the company trucks and payment on pickup truck (R. pp. 7-16).

"5. Checks composing Plaintiff's Exhibit No. 1 were issued during the year 1958 and were also issued during the early part of 1959 (R. p. 3), were drawn on plaintiff's private bank account (R. p. 5), were all delivered to Mr. Ralph Long or to Mr. Rufus Davis (R. p. 17).

"6. Payment in full for said advances or loans has been demanded of the defendant (R. p. 25) and defendant has never made any payment (R. pp. 4, 21, 25).

"7. Mr. Ralph Long, husband of plaintiff, was secretary of Southeastern Beverage Co. (R. pp. 20, 83).

"8. Mr. Rufus Davis was the plant manager of Southeastern Beverage Co. (R. pp. 79, 84, 119).

"9. The defendant, George G. Honeycutt, was president and treasurer of Southeastern Beverage Co. (R. pp. 20, 147), and as treasurer was responsible for keeping, or having kept, the books of the corporation (R. p. 147).

"10. The plaintiff, Cornelia Taylor Long, was never an officer of Southeastern Beverage Co., never participated in the operation of the corporation (R. p. 20) and never asked for access to the corporate books (R. p. 57).

"11. Proceeds of plaintiff's Exhibit No. 1 — with the exception of the $160.00 waived heretofore — went to the use and benefit of Southeastern Beverage Co. (R. pp. 7-16, 86, 87, 89, 93, 121, 123).

"12. Immediately prior to the preparation and execution of plaintiff's Exhibit No. 2, plaintiff and defendant owned 50% each of the voting stock of Southeastern Beverage Co. (R. pp.

17, 18); plaintiff's 50% of the voting stock was 24,000 shares of $1.00 par value A common stock (R. pp. 104, 105), plaintiff owned 7,690 shares of class B nonvoting $1.00 par value stock of Southeastern Beverage Co., same having been issued for advances or loans to Southeastern Beverage Co. prior to the January, 1958 (R. pp. 104, 105, 106, 35-38, 129, 48).

"13.  Immediately prior to the preparation and execution of Plaintiff's Exhibit No. 2, the corporate records of Southeastern Beverage Co. did not reflect the advances or loans made by plaintiff or defendant as 'accounts payable'; (R. pp. 159, 170) however, Mrs. Frances Poe, the bookkeeper of Southeastern Beverage Co. during the year of 1958 and through March, 1959 (R. p. 162), prepared lists of advancements or loans by both plaintiff and defendant to the corporation periodically (R. p. 169) from a page in said corporate records entitled 'Loans by Officers' (R. p. 173) which listed advances by plaintiff and defendant; the 'loans by officers' page contained the date and amount of every loan or advance by plaintiff or defendant and at any time would reflect the exact amount contributed by each (R. pp. 130, 174).

"14.  Plaintiff's Exhibit No. 2 was prepared by Mr. George F. Phillips, attorney for defendant, (R. pp. 25, 157).

"15.  Plaintiff's husband, Ralph Long, represented her in negotiating plaintiff's Exhibit No. 2 (R. pp. 32, 51, 103, 138, 155, 182, 184, 193, 195).

"16.  Plaintiff never talked with the attorney who prepared the contract (R. p. 26), never talked with the defendant before it was signed (R. p. 26) and never talked with defendant or defendant's attorney in regard to the meaning of the provisions of the contract (R. p. 26).

"17.  The figure of $28,807 contained in paragraph 7 of Plaintiff's Exhibit No. 2 did not include $11,547.16 presently sued for (R. p. 113) but was reached by dealing with the shares of stock of Southeastern Beverage Co. under control of the plaintiff; namely, 24,000 shares A voting common stock owned by plaintiff; $25,000 of B nonvoting common stock owned by Major Cola Bottling Company, 7,690 shares of B nonvoting common stock owned by plaintiff — all of this stock having a par value of $1.00 — 2,310 shares of nonvoting common B par value $1.00 stock to be transferred and delivered to plaintiff and reductions from these investments, or funds theretofore contributed to the capital structure of the corporation as evidenced by stock retained (7,690 shares), stock to be transferred to plaintiff (2,310 shares), and by plaintiff's escape from lia-

bility on amounts owed on two corporate notes endorsed by plaintiff ($18,000.00), plus or minus current interest due or current interest prepaid (R. pp. 104-106, 108).

"18. Plaintiff received no cash for execution of Plaintiff's Exhibit No. 2 (R. p. 79), did not ask her husband how the $28,807 mentioned in paragraph 7 of the Plaintiff's Exhibit No. 2 was derived (R. p. 56) but makes no issue that she did or did not receive 2,310 shares of nonvoting B stock (R. p. 81).

"19. Negotiations concerning Plaintiff's Exhibit No. 2 took place in the defendant's office (R. pp. 101, 138); redrafts of Plaintiff's Exhibit No. 2 were made at Mr. Long's suggestion (R. p. 102).

"20. The defendant says he knows how the figure of $28,807 was reached but cannot break this figure down into component parts (R. pp, 140, 142).

"21. After the execution of the contract, the defendant and Mr. Ralph Long met with defendant's attorney, Robert Stockton, in an effort to clarify Plaintiff's Exhibit No. 2 (R. pp. 212, 213), but no modification of Plaintiff's Exhibit No. 2 was made (R. p. 216).

"The Referee submits to the Court his conclusions of law as follows:

"1. The contract, Plaintiff's Exhibit No. 2, entered into between the parties is an entire integrated contract.

"2. The parties to the action have not contended that the written contract did not contain their entire and complete agreement; neither party contends that any oral contemporaneous contract was made which would not add to or vary the written contract; neither party contends that any contemporaneous oral contract was made which contradicts the simple written word of the contract.

"3. Neither party contends that Plaintiff's Exhibit No. 2 was abandoned nor does either party contend that Plaintiff's Exhibit No. 2 was followed by any subsequent parol agreement or modified by subsequent conduct.

"4. Defendant maintains that the use of the word 'obligations' in paragraph 1 of Plaintiff's Exhibit No. 2 in relation to paragraph 7 of said Exhibit constitutes an uncertain and ambiguous term but offers no credible testimony to support said contention in that defendant fails to offer testimony explaining all of the component parts of the figure of $28,807 contained in paragraph 7.

"5. Uncertainty or ambiguity, if any exists, in interpreting

the contract must be held against the party preparing the contract *i.e.* the defendant.

"6. The common and legal connotation of the word 'obligations' in paragraph 1 of Plaintiff's Exhibit No. 2 in view of conclusion of law No. 5 would include all debts owed by the corporation on the date of its execution and these debts included the loans or advancements made by plaintiff in the amount of $11,547.16; the term 'investment' as used in paragraph 7 of Plaintiff's Exhibit No. 2, as explained fully by plaintiff's witnesses and as not explained by defendant's witnesses and as taken in its normal and legal meaning would include, in light of finding of law No. 5 above, only the capital structure of the corporation less in this instance notes of the corporation personally endorsed by the plaintiff, and if interpreted otherwise would leave paragraph 1 of Plaintiff's Exhibit No. 2 meaningless.

"7. If ambiguity in this contract did as a matter of fact exist, such ambiguity should be inclined against the defendant as author of the contract. The entire written agreement should be construed to give effect to all paragraphs.

"Upon the foregoing findings of fact and conclusions of law, the Referee reports to the Court his decision as follows:

"The defendant is indebted to the plaintiff in the sum of $11,547.16, together with interest on the principal amount from March 3, 1959."

Defendant filed exceptions to the referee's report, demanded a jury trial, and submitted what he deemed to be appropriate issues.

When the case came on to be heard before Judge Crissman and a jury, the parties entered into the following stipulation:

"It is stipulated and agreed by and between the attorney for the plaintiff and the attorney for the defendant that the evidence to be read to and considered by the jury shall consist entirely of the adverse examinations of the plaintiff and defendant taken 29 August 1963 and the transcript taken before the referee on 2 and 7 October 1964 and as subsequently shortened and limited by agreement of counsel."

Judge Crissman did not submit to the jury the issues tendered by defendant, but did submit to the jury the following issues, which were answered as appears:

"1. Were the advances made by the plaintiff to the Southeastern Beverage Company intended by the parties to be included in the provisions of paragraph I of the contract?
"Answer: Yes.

"2. If so, in what amount is the defendant indebted to the plaintiff?
"Answer: $11,547.16."

Defendant did not except to the failure to submit the issues tendered by him, and did not except to the issues submitted to the jury by Judge Crissman.

From a judgment entered in accordance with the verdict that plaintiff recover from defendant the sum of $11,547.16 with interest thereon from 13 September 1961, together with the costs of this action, defendant appeals to the Supreme Court.

*Robert M. Bryant* for defendant appellant.
*Craige, Brawley, Lucas & Horton* by *Hamilton C. Horton, Jr.,* for plaintiff appellee.

PARKER, C.J. Defendant assigns as error the order of compulsory reference. This assignment of error is overruled.

G.S. 1-189 provides in relevant part: "Where the parties do not consent, the court may, upon the application of either, or of its own motion, direct a reference in the following cases: 1. Where the trial of an issue of fact requires the examination of a long account on either side; in which case the referee may be directed to hear and decide the whole issue, or to report upon any specific question of fact involved therein." It is said in *Rudisill v. Hoyle*, 254 N.C. 33, 118 S.E. 2d 145: "The ordering or refusal to order a compulsory reference in an action which the court has authority to refer is a matter within the sound discretion of the court." Plaintiff alleged in her complaint the obligations of Southeastern on 27 February 1959, which defendant agreed to assume, included $11,707.16 owing to plaintiff for loans made to Southeastern and for other payments made by plaintiff for the benefit of Southeastern. Defendant in his answer denied this allegation of fact in plaintiff's complaint. At the time Judge Armstrong entered his order of compulsory reference, it would seem Judge Armstrong from reading the pleadings could reasonably expect a long and tedious inquiry in respect to loans made to Southeastern by plaintiff and in respect to payments made by plaintiff for the benefit of Southeastern in order to settle the litigation, and he was authorized by G.S. 1-189 to order a compulsory reference. It may not be said as a matter of law from reading the pleadings that plaintiff's cause of action did not require the consideration of a "long account." This is in line with our following decisions: *Perry v. Doub*, 249 N.C. 322, 106 S.E. 2d 582; *Grimes v. Beaufort County*, 218 N.C. 164, 10 S.E. 2d 640; *Texas Co. v. Phil-*

*lips,* 206 N.C. 355, 174 S.E. 115; *Fry v. Pomona Mills, Inc.,* 206 N.C. 768, 175 S.E. 156; *Manufacturing Co. v. Horn,* 203 N.C. 732, 167 S.E. 42; *Bank v. Evans,* 191 N.C. 535, 132 S.E. 563. *Finance Co. v. Culler,* 236 N.C. 758, 73 S.E. 2d 780, relied upon by defendant is clearly factually distinguishable.

Defendant states in his brief that the court was in error "when it refused to allow the defendant to introduce in evidence the list of 'Accounts Payable' of the Southeastern Beverage Company since the theory under which the plaintiff seeks to recover is based on her being a creditor of the corporation," and he further states in his brief that the court erred "in refusing to admit evidence of a note which was made out to plaintiff by the corporation and which was assigned by plaintiff to defendant's wife at the same time she executed the contract involved in this case." These assignments of error are overruled for failure to comply with our Rules, because they do not disclose the question sought to be presented without the necessity of going beyond the assignments of error themselves to the record, and such failure to comply with our Rules does not present the exceptions for review. *Plumbing Co. v. Harris,* 266 N.C. 675, 147 S.E. 2d 202; *Balint v. Grayson,* 256 N.C. 490, 124 S.E. 2d 364. And further, an examination of the record shows that the evidence excluded was, if not irrelevant, certainly not prejudicial. Defendant testified: "No list of creditors of the corporation ever submitted to me had Mrs. Cornelia Taylor Long's name appearing on it."

Defendant assigns as error the refusal of the court to allow the testimony of Robert Stockton, an attorney at law, in respect to a conference had in his office with defendant and plaintiff's husband in connection with a contract between plaintiff and defendant with Major Cola Bottling Company, and as to his legal opinion in respect to certain parts of that contract. Defendant states in his brief as follows: "Was the court not in error when it refused to allow the testimony of Robert Stockton to be admitted in evidence when such testimony tended to show that the intention of the parties was for indemnification purposes only?" There is nothing in the record to show that at such conference plaintiff's husband was her agent or authorized to act for her, and plaintiff was not present at the conference. A reading of Mr. Stockton's testimony fails to show that defendant was prejudiced by the court's refusal to admit it in evidence. This assignment of error is overruled.

The other assignments of error made by defendant are formal. The court's charge to the jury is not set forth in the record. Consequently, it is presumed that the jury was instructed correctly on

every principle of law applicable to the facts. *Jones v. Mathis,* 254 N.C. 421, 119 S.E. 2d 200.

In the trial below we find

No error.

PLESS, J., took no part in the consideration or decision of this case.