CHARLES B. NYE v. HOWARD ALAN LIPTON, ADMINISTRATOR C.T.A. OF THE ESTATE OF ROBERT I. LIPTON, DECEASED, AND C. PAUL ROBERTS

No. 8014SC362

(Filed 6 January 1981)

### 1. Principal and Agent § 11— collection of money by attorney-in-fact — failure to make payment to plaintiff — summary judgment proper

In an action to recover the amount of a note from the estate of the borrower's attorney-in-fact, summary judgment was properly entered for plaintiff where plaintiff filed affidavits by witnesses other than himself which were not inherently incredible and were not self-contradictory nor susceptible to conflicting inferences which established that plaintiff made a loan to the borrower in the amount of $33,000 for which plaintiff took a note from the borrower; the borrower gave written instructions to the attorney-in-fact to pay the $33,000 to plaintiff from the first monies of the borrower which came to the attorney-in-fact, and the attorney-in-fact agreed to do this; the attorney-in-fact received $200,000 for the borrower by check dated 11 November 1976; the attorney-in-fact did not pay plaintiff as he had agreed to do; and an affidavit filed by the administrator of the attorney-in-fact which showed $86,174 had been received by the attorney-in-fact for the borrower between 12 July 1976 and 1 November 1976 and $8,697 had been paid by the attorney-in-fact to a bank for the plaintiff during that period did not raise a triable issue of fact as plaintiff's uncontradicted affidavit explained that these monies involved a completely separate transaction.

### 2. Principal and Agent § 11— claims against the principal and agent — claims not inconsistent

In plaintiff's action to recover the amount of a note from the estate of the borrower's attorney-in-fact, the trial court did not err in entering summary judgment against the administrator of the estate of the attorney-in-fact after judgment had been entered against the borrower, since plaintiff was pursuing separate claims growing out of the same transaction; his claim against the borrower was based on a theory that he made a loan to the borrower which had not been paid; plaintiff's claim against the administrator was on the theory that deceased, as attorney-in-fact for the borrower, was under instructions from the borrower to pay the debt to plaintiff, and the deceased failed to pay the debt after receiving funds to do so; these two claims were consistent and plaintiff could pursue both of them; and the payment of either claim would extinguish both.

### 3. Contracts § 18.2— waiver of contract provisions — insufficiency of evidence

In an action to recover the amount of a note from the estate of the borrower's attorney-in-fact where the evidence tended to show that the borrower gave written instructions to his attorney-in-fact to pay the amount of the loan to plaintiff from the first monies of the borrower which came to the attorney-in-fact, monies came into the hands of the attorney-in-fact, but the attorney-in-fact did not pay plaintiff as he had agreed to do, there was no merit to the argument of defendant administrator that, with full knowledge of plaintiff, the first monies were not paid to plaintiff but

Nye v. Lipton

were applied on behalf of plaintiff to other obligations owed by him to a bank and that by accepting the benefits without protest, plaintiff waived his right to strict compliance with the contract and could not recover damages because of the attorney-in-fact's failure to perform, since all the evidence was that plaintiff insisted throughout the period in controversy that the attorney-in-fact pay him the amount of the loan and there was no evidence that plaintiff agreed that the payment to the bank would be in lieu of the repayment of the loan.

**4. Evidence § 11.8— transactions with deceased person — defendant's evidence as opening door**

There was no merit to defendant's contention that much of the affidavit testimony upon which the trial court based its decision should have been excluded under G.S. 8-51 as testimony of transactions with a deceased person, since defendant, by offering evidence as to a completely independent transaction, opened the door for plaintiff to give an explanation by his own affidavit.

APPEAL by defendant *Howard Alan Lipton,* Administrator C.T.A. of the estate of *Robert I. Lipton,* from *Jolly, Judge.* Judgment entered 2 November 1979 in Superior Court, DURHAM County. Heard in the Court of Appeals 9 October 1980.

In this action the plaintiff has alleged that the defendants are jointly and severally liable to him. He alleged his claims are based on a note for $33,000.00 from C. Paul Roberts for a loan made by the plaintiff to Roberts. He alleged further that at the time the note was executed Robert I. Lipton was attorney-in-fact for C. Paul Roberts and was handling Roberts' finances; that Roberts and Lipton represented to plaintiff that Lipton was to receive $200,000.00 from the sale of a note owned by Roberts, and that plaintiff would be paid from the proceeds of this sale. The plaintiff further alleged that Roberts gave Lipton and Lipton accepted written instructions to pay the plaintiff $33,000.00 with interest from monies received by Lipton from any source payable to Roberts; that Lipton received the proceeds from the sale of the note for Roberts but did not pay plaintiff.

Roberts did not contest the allegations against him. Summary judgment was entered against Roberts who did not appeal. The defendant Lipton denied the pertinent allegations on information and belief.

Plaintiff moved for summary judgment against Howard Alan Lipton, Administrator, and supported it with affidavits by C. Paul Roberts, Timothy E. Oates, and James M. Ludlow, Jr. Timothy Oates said in his affidavit that on or about 19 November 1976 he was

working in the law offices of Robert I. Lipton; that he heard Mr. Nye and Mr. Lipton discuss the loan; that Mr. Lipton told Mr. Nye not to worry because he had Mr. Lipton's written promise that he would pay him; that he expected to receive $200,000.00 for Mr. Roberts from the sale of a note to World Service Life Insurance Company; and that he would pay Mr. Nye from the first monies coming into his possession for the use of Paul Roberts. Mr. Oates further said that he had gone to Texas and returned with a check for $200,000.00 from the sale of the note, which check was deposited in Mr. Lipton's trustee account. by an amended affidavit, Mr. Oates gave the date for his trip to Texas and return with the check as sometime in November 1976. James Ludlow's affidavit corroborated the affidavit of Timothy Oates. C. Paul Roberts in his affidavit stated essentially the same things that Timothy Oates had said and also stated that Robert I. Lipton did not pay the note. The plaintiff also filed copies of the power of attorney given by C. Paul Roberts to Robert I. Lipton, a note dated 12 July 1976 for $33,000.00 from C. Paul Roberts to plaintff, and a letter dated 12 July 1976 from C. Paul Roberts to Robert I. Lipton instructing Mr. Lipton to pay to plaintiff $33,000.00 from the first monies of Roberts coming into the hands of Mr. Lipton, which letter had been marked "Okay" by Robert I. Lipton.

In opposition to the motion for summary judgment, the appellant filed an affidavit by Stuart Lipton, son of Robert I. Lipton, in which he said the records relating to Robert I. Lipton's legal practice revealed that from 12 July 1976 to 1 November 1976, $86,174.54 was received on behalf of C. Paul Roberts and $8,697.20 was paid by Robert I. Lipton to First Union National Bank on behalf of Charles B. Nye from these same funds.

After the affidavit of Stuart S. Lipton was filed, the plaintiff filed his own affidavit and an affidavit by Robert N. Rosenstein. In his affidavit, the plaintiff said that in a transaction unconnected with the transaction in controvery in this case, he had borrowed $100,000.00 from the First Union National Bank which he lent to C. Paul Roberts; that this was part of a transaction in which several persons had borrowed a total of $700,000.00 to lend C. Paul Roberts; that Robert I. Lipton was to collect on the loan and make payments of $2,174.30 per month to the First Union National Bank for the plaintiff; that Robert I. Lipton had made four payments on this loan for a total of $8,697.20; and that plaintiff had paid the balance due on the note for $100,000.00

after the death of Robert I. Lipton. Robert N. Rosenstein stated in his affidavit that he had participated with the plaintiff and several others in borrowing a total of $700,000.00; that the loans were made at First Union National Bank; that Robert I. Lipton was to repay the loans with funds of C. Paul Roberts; and that Robert I. Lipton had made payments to First Union National Bank on the loans for several months prior to his death. Plaintiff filed a copy of a note he had made to First Union National Bank dated 5 May 1976 in the amount of $100,000.00 payable in monthly installments of $2,174.30, which note was marked "paid" on 4 January 1977. He also filed a copy of his check dated 4 May 1976 to C. Paul Roberts in the amount of $105,000.00, and his check dated 27 December 1976 to First Union National Bank in the amount of $90,875.02 which was marked "for payment of note in full."

The court allowed the plaintiff's motion for summary judgment. Howard Alan Lipton, Administrator C.T.A., appealed.

*Charles B. Nye, pro se, for plaintiff appellee.*

*Maxwell, Freeman, Beason and Lambe, by James B. Maxwell, and Powe, Porter, Alphin and Whichard, by N. A. Ciompi, for defendant appellant Howard A. Lipton, Administrator C.T.A. of the Estate of Robert I. Lipton, Deceased.*

WEBB, Judge.

At the outset we note that the plaintiff, who has the burden of proof, relies on testimonial affidavits to establish there is no genuine issue of a material fact. For a well-reasoned article on this subject, *see Kidd v. Early: Summary Judgment on Testimonial Evidence in North Carolina* by Rebecca Weiant Giles, 55 N.C.L. Rev. 232 (1977). Our Supreme Court has passed on the use of testimonial affidavits on motions for summary judgment in *Kidd v. Early,* 289 N.C. 343, 222 S.E. 2d 392 (1976). As we read *Kidd,* our Supreme Court holds that G.S. 1A-1, Rule 56 is used to determine whether there is an issue of fact to be tried. If the moving party files papers, including testimonial affidavits which show there is not a triable issue, the opposing party pursuant to Rule 56(e) and (f), must file papers which show there is a triable issue or the moving party will be entitled to summary judgment. The papers filed by the moving party must not be self-contradictory or circumstantially suspicious, and the credibility of a witness must not be inherently suspect either because he is interested in the outcome of the case and the facts are peculiarly within his knowledge,

or because he has testified as to matters of opinion involving a substantial margin for honest error. There must not be gaps in the evidence and inferences inconsistent with the existence of an essential element may not be made from the testimony.

[1]   In the case sub judice, the plaintiff has filed affidavits by witnesses other than himself which are not inherently incredible and are not self-contradictory nor susceptible to conflicting inferences which establish the following facts: (1) plaintiff made a loan to C. Paul Roberts in the amount of $33,000.00 for which the plaintiff took a note from C. Paul Roberts; (2) C. Paul Roberts gave written instructions to his attorney-in-fact Robert I. Lipton to pay the $33,000.00 to the plaintiff from the first monies of C. Paul Roberts which came to Robert I. Lipton, and Robert I. Lipton agreed to do this; (3) Robert I. Lipton received $200,000.00 for C. Paul Roberts by check dated 11 November 1976, and (4) Robert I. Lipton did not pay the plaintiff as he had agreed to do. If these facts are not in issue the plaintiff is entitled to summary judgment. In order to show there was a triable issue, the appellant filed an affidavit which showed $86,174.54 had been received by Robert I. Lipton for C. Paul Roberts between 12 July 1976 and 1 November 1976 and $8,697.20 had been paid by Robert I. Lipton to the First Union National Bank for the plaintiff during that period. In explanation of this payment, plaintiff filed his own affidavit as well as the affidavit of Robert N. Rosenstein. Both of these affidavits stated that in a transaction not connected with the subject matter of the case sub judice, the plaintiff and several other persons had borrowed money from the First Union National Bank and invested it in a project of C. Paul Roberts. Robert I. Lipton was to make the note payments for plaintiff and the others and did make several of them before his death. This explanation was uncontradicted.

We hold that the defendant's affidavit does not so contradict the plaintiff's affidavits as to create a triable issue. Defendant's affidavit does not contradict the evidence that Robert I. Lipton received a check for $200,000.00 dated 11 November 1976. It states that $8,697.20 was paid to First Union National Bank for plaintiff but does not show why this payment was made. The plaintiff's affidavit and the affidavit of Mr. Rosenstein explain without contradiction that this payment was for a separate transaction. Although the plaintiff is relying on his own affidavit to support in part his explanation of the transaction, the facts he states are not peculiarly within his knowledge. He supports

his affidavit with documents and the affidavit of Robert N. Rosenstein. We hold that these affidavits and documents establish that there is not a triable issue as to the purpose of the payment of the $8,697.20 to the First Union National Bank.

**[2]** The appellant contends it was error to grant the motion for summary judgment against him after judgment was entered against his co-defendant, C. Paul Roberts. The appellant argues that the liability of a principal and agent is in the alternative and both cannot be liable. The appellant cites *Plumbing Co. v. Harris,* 266 N.C. 675, 147 S.E. 2d 202 (1966) and *Walston v. Whitley & Co.,* 226 N.C. 537, 39 S.E. 2d 375 (1946) for the proposition that the plaintiff elected his remedy by getting a judgment against Roberts, and he cannot now proceed against the administrator. We do not believe either of these two cases is precedent for the case *sub judice.* In *Plumbing Co.,* our Supreme Court held that a suit for breach of contract does not lie against a principal contractor after the subcontractor has secured a lien on the same claim against the landowner on the theory that the contract was made with the landowner. Our Supreme Court would not allow judgments on inconsistent claims. In *Walston,* our Supreme Court affirmed a dismissal as to the agent when the plaintiff sued the principal and agent for breach of warranty. Our Supreme Court held that so long as the agent acted within the scope of his authority he was not liable. In the case *sub judice* the plaintiff is pursuing separate claims growing out of the same transaction. His claim against C. Paul Roberts is based on the theory that he has made a loan to C. Paul Roberts which has not been paid. His claim against the appellant is on the theory that Robert I. Lipton as attorney-in-fact for C. Paul Roberts was under instructions from C. Paul Roberts to pay the debt to plaintiff, and Robert I. Lipton failed to pay the debt after receiving funds to do so. These two claims are consistent and plaintiff may pursue both of them. The payment of either claim will extinguish both.

**[3]** The appellant next contends there was a triable issue as to waiver by the plaintiff. He argues that Robert I. Lipton was bound by the instructions in the letter to pay "[f]rom the first monies coming into your hands . . . payable to [Roberts]" the amount due under the loan. Appellant argues there is evidence in the record that with the full knowledge of the plaintiff the "first monies" were not paid to plaintiff but were applied on behalf of the plaintiff to other obligations owed by the plaintiff to the First Union National Bank. The appellant contends

that by accepting the benefits without protest, the plaintiff waived his right to strict compliance with the contract and cannot now recover damages because of Robert I. Lipton's failure to perform. A party may waive a contract right by a voluntary and intentional relinquishment of a known right. *See Jones v. Insurance Co.,* 254 N.C. 407, 119 S.E. 2d 215 (1961) and 17A C.J.S. *Contracts* § 514(1) (1963). We hold that there is not sufficient evidence in this case for a jury to find that Charles B. Nye intentionally and knowingly relinquished his right to have Robert I. Lipton pay him the $33,000.00. All the evidence is that Charles B. Nye insisted throughout the period in controversy that Robert I. Lipton pay him the $33,000.00. There is no evidence that Charles B. Nye agreed that the payment to First Union National Bank would be in lieu of the repayment of the note for $33,000.00.

Appellant also contends plaintiff is estopped from getting a judgment against him. Appellant relies on *Hamilton v. Hamilton,* 296 N.C. 574, 251 S.E. 2d 441 (1979); *English v. Realty Corp.,* 41 N.C. App. 1, 254 S.E. 2d 223, *disc. rev. denied,* 297 N.C. 609, 257 S.E. 2d 217 (1979); *Redevelopment Comm. v. Hannaford,* 29 N.C. App. 1, 222 S.E. 2d 752 (1976). We do not believe any of these cases help the appellant. There is no evidence that the plaintiff has taken inconsistent positions, nor is there any evidence that Robert I. Lipton or the appellant changed his position by relying on representations of the plaintiff. Estoppel does not apply.

**[4]** The defendant next contends that much of the affidavit testimony upon which the court based its decision should have been excluded under G.S. 8-51 as testimony of transactions with a deceased person. Defendant contends the affidavits of plaintiff and C. Paul Roberts should not have been considered since both were parties to the action and both were interested in the outcome. We believe that the affidavit of Timothy Oates is sufficient to support summary judgment for plaintiff if the defendant had not filed the affidavit in regard to the payments to the First Union National Bank. When the defendant offered evidence as to this transaction, he opened the door for the plaintiff to explain it by his own affidavit. *See Pearce v. Barham,* 267 N.C. 707, 149 S.E. 2d 22 (1966).

Affirmed.

Chief Judge MORRIS and Judge CLARK concur.