Eugen **HIRSCH**, Plaintiff-Appellant,

v.

**ARCHER–DANIELS–MIDLAND COMPANY**, Defendant-Appellee.

No. 273, Docket 24950.

United States Court of Appeals
Second Circuit.

Argued March 25, 1958.

Decided July 10, 1958.

---

45

Eugen Hirsch, New York City, pro se.

Freedman & Unger, New York City, for appellant.

A. Donald MacKinnon, New York City, (Edward J. Reilly, Jr. and Milbank, Tweed, Hope & Hadley, New York City, on the brief), for defendant-appellee.

Before CLARK, Chief Judge, LUMBARD, Circuit Judge, and DIMOCK, District Judge.

LUMBARD, Circuit Judge.

█ Plaintiff appeals from an order of Judge Ryan, Southern District of New York, dismissing his complaint and entering judgment for the defendant. Although defendant's motion was to dismiss pursuant to Rule 12(b) (6), Federal Rules of Civil Procedure, 28 U.S. C.A., for failure to state a claim upon which relief could be granted, the affida-

vits introduced by both parties require the motion to be treated as one for summary judgment. See Rule 12(b), Federal Rules of Civil Procedure. The sole question is whether the complaint, together with the affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56, Federal Rules of Civil Procedure.

A chronology of events is particularly helpful in explaining our disposition of this appeal. According to his allegations, Hirsch, who for some time had been active in development work and research in the field of emulsion paints and paint vehicles, entered into a contract with defendant, a well-known manufacturer of paint vehicles, on January 24, 1956. This contract was the result of certain demonstrations by Hirsch at defendant's Newark, N. J. laboratory during the preceding month which indicated possible commercial merit to an emulsion process on which Hirsch was working. The agreement provided that plaintiff would be hired for a month for $600 as a consultant to prepare his paint vehicles at the Newark laboratory. At the end of this period defendant, after evaluating the results could either discontinue the project or continue to employ plaintiff for two additional months at the same $600 monthly salary, during which time Hirsch would disclose his "formulae and know-how." Upon expiration of this period, defendant could either terminate the relationship, agreeing not to make use of any disclosures previously unknown to it, or it could, if it believed the process to have commercial value, engage Hirsch for a three-year period at $600 per month and commercially promote the product. The one-month period was subsequently extended for a month and defendant later proposed a further extension of the trial period, which Hirsch refused. The relationship was thereupon terminated on May 24, 1956.

Hirsch then initiated an action on September 17, 1956 in the United States District Court for the Southern District of New York. He at that time and all times subsequently has acted for himself and, as often occurs in such situations, the complaint is a verbose catalogue of grievances. The gravamen of the complaint, however, is that the defendant appropriated and exploited his process without compensating him for it. Plaintiff also asserted, as more clearly appears in his correspondence with the company, that the defendant was obligated by contract to retain him for three years if the process had possible commercial value, irrespective of use by defendant. This action terminated in a general release signed by Hirsch on November 14, 1956, for which he received $1,800.

The complaint which resulted in the adverse judgment from which Hirsch now appeals was filed on August 5, 1957. In it he seeks to set aside the release and recover both profits arising from alleged use of his process and a $21,600 consulting fee under the contract.

If plaintiff is to maintain his second action, which is similar to his first, he must avoid the effects of the release he granted. Both parties agree that it may be avoided for fraudulent representations made by the defendant and relied on by the plaintiff in granting the release. The lower court held, however, that there was "no claim as to a present, false statement of an existing state of mind or intention of the defendant" because it believed the complaint merely alleged that the defendant represented at the time the release was signed that the process was not useful to it though it later commercially promoted the emulsion. Since such a change of mind is not fraudulent, the court entered judgment for the defendant.

We think the district court misapprehended plaintiff's allegations and the statements in his affidavits. Plaintiff alleges in his complaint that the defendant represented that at the time of the release it was not interested in nor would make use of the process, and that he relied on these statements, as well as the prior contract, in terminating his action. He further alleges that at the time

of the release defendant was already marketing his process and that the statements were made with knowledge of the commercial promotion.[1] These clearly are allegations that defendant falsely stated its present intention. Such statements, if proved, constitute fraud. Sabo v. Delman, 1957, 3 N.Y.2d 155, 164 N.Y. S.2d 714, 143 N.E.2d 906.

Even though an issue of fact may be formally raised in the pleadings, affidavits may disclose that the issue is not genuine and permit summary disposition of the litigation. Engl v. Aetna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469. Defendant's affidavit here, however, in contravening these allegations, states only that plaintiff "has not alleged a single fact in the complaint that shows he was in any way misled." In light of paragraphs Sixteenth and Seventeenth of the complaint we think the statement is inaccurate. Further, the statement in terms attacks only the sufficiency of the allegations; it does not on personal knowledge deny that misrepresentations were made and relied upon, and therefore it does not bring into question the truth or falsity of the allegations.

In view of this failure to attack the substance of the allegations by affidavit, plaintiff was not obligated to file a counter-affidavit. Griffith v. William Penn Broadcasting Co., D.C.E.D.Pa.1945, 4 F.R.D. 475. A reply affidavit was nevertheless introduced, and although it is perhaps more disorganized than the complaint it does unmistakenly aver that plaintiff, not being aware of defendant's commercial promotion of the process, relied on misrepresentations in signing the release.

Indeed, defendant does not seriously contend on appeal that the plaintiff does not raise any genuine issue of fact as to whether fraudulent statements were made. Rather, it now asserts that as a matter of law there was no reliance on the alleged misrepresentations. This contention is grounded on the first complaint, where Hirsch alleged commercial use by the defendant, since if the plaintiff believed his process to be in use before he signed the release he could not have relied on subsequent statements that it was not. Further, if he did not believe that defendant was exploiting his process, his acceptance of the $1,800 was fraudulent.

The prior pleadings, however, are not necessarily inconsistent with the allegations of the complaint on appeal and the statements in the affidavit, nor does it clearly preclude reliance. One may reasonably believe that his process is being used and bring suit, only to settle later on assurances that his process is either not being marketed or that the process being promoted is sufficiently different to raise a serious question whether it is the same. Defendant's contention may tend to suggest that the statements either were not made or were not relied upon, but they affect only the credibility to be attached to testimony during trial and do not permit disposition of the suit by summary judgment. Whitaker v. Coleman, 5 Cir., 1940, 115 F.2d 305.

Reversed.

[1]. The complaint alleges *inter alia* the following:

"Sixteenth: * * * plaintiff also discovered that on the date of November 14, 1956, at the time when the release was granted to the defendant (the process) was already on the market and promoted by the defendant * * *. If this act committed by the defendant is not plain and common cheating or defrauding I don't know how (far) a party could go before he will be condemned as a cheater and to be compelled to return the object which he has so acquired and in this instant it is 'the release.' * *

"Seventeenth: * * * defendant attained the release from the plaintiff in November 14, 1956 by making the plaintiff to believe that, they will not commercialize or not use his process and these promises or statements were made by the defendant knowing that said products are placed by the defendant on the market. * * *"