Walter K. RIEDEL, Appellant,

v.

ATLAS VAN LINES, INC., and Knowles Storage & Moving Company, Appellees.

No. 16264.

United States Court of Appeals Eighth Circuit.

Dec. 30, 1959.

Rehearing Denied Jan. 27, 1960.

Albert Thomson, Kansas City, Mo. (Tom J. Helms; Davis, Thomson, Van Dyke & Fairchild, Kansas City, Mo., on the brief), for appellant.

Glenn A. Burkart, Springfield, Mo. (Frank C. Mann, Springfield, Mo., Frank J. Stark, and John R. Caslavka, Kansas City, Mo., on the brief), for appellees.

Before WOODROUGH and MATTHES, Circuit Judges, and MICKELSON, District Judge.

20. Cf. Prentice-Hall, Federal Taxes, Vol. 2, § 11,918, Prepaid Expenses, slip sheet 1/1/59.

MICKELSON, District Judge.

This action was brought by the plaintiff to recover damages for personal injuries sustained in an automobile collision which occurred on March 8, 1958. The parties will be referred to as they were designated in the trial court. Jurisdiction is based upon diversity of citizenship, and the amount involved exceeds the statutory requirements.

The plaintiff, Walter K. Riedel, was severely and permanently injured when his vehicle was struck head-on by an automobile driven by one James Harris in Vernon County, Missouri.

The defendants in the action were James Harris, hereinafter called *Harris;* Knowles Storage & Moving Company, a corporation, hereinafter called *Knowles;* and Atlas Van Lines, Inc., a corporation, hereinafter called *Atlas.*

The facts are as follows: Knowles owned a tractor-trailer unit, and entered into a lease agreement (hereinafter called the lease) with Atlas, the pertinent provisions of which will be hereinafter mentioned. Harris was furnished by Knowles as the driver of the unit and was on the Knowles payroll. The lease provided that Atlas was to pay rental to Knowles for the use of the unit according to the applicable rules and regulations of Atlas, and was to use the unit exclusively in the business and service of Atlas; the unit was to be operated solely and exclusively under the direction and control of Atlas; Knowles agreed to maintain the unit at its cost in good condition of repair and service, and agreed to pay all expenses of operation, including wages of the driver, taxes, repairs and other costs.

Harris was an hourly employee, paid by Knowles. When his unit broke down he received "lay over" time; i. e., he received eight hours' pay for six days while waiting, no pay for the seventh day, and the pay commenced again on the eighth day. Harris' duties as a Knowles employee were cross-country moving, loading and unloading of household goods and furniture, driving the unit and occasionally collecting C.O.D. charges. He was in sole charge of the unit.

The day before the accident here in question, Harris was driving the unit loaded with furniture near Rich Hill, Missouri. The motor "went out" and Harris "babied" it into the Tracy Brothers garage at Rich Hill. Tracy, the garage man, examined the engine and found that it needed a new shortblock. Harris called McGuire, a Knowles executive, who authorized the installation of a new shortblock. Tracy, with Harris accompanying him solely for the ride, drove to Kansas City, where Tracy purchased a new shortblock and returned at once to Rich Hill.

The following day, being the day of the collision here involved, Tracy started to install the shortblock but found that a valve seat in the head of the engine was loose. There was no equipment in Rich Hill with which a valve seat could be repaired. Repairs of this sort had to be made in Nevada, Missouri, a town 14 miles from Rich Hill.

On direct examination Tracy testified that Harris was in a hurry to get the unit on the road, and suggested that he borrow Tracy's car and take the head to Nevada while Tracy worked on the engine. On cross-examination Tracy testified that he told Harris that if Harris had a way to Nevada, he, Tracy, could get the job done quicker. Tracy then said, "there is my automobile". Harris did not request Tracy to loan him his car. Tracy told Harris where to go in Nevada, and what to have done there.

Harris testified that the trip to Nevada in Tracy's car was made at Tracy's suggestion, and that Tracy told him where to go and what to have done; that Tracy did not pay him or promise to pay him anything for making the trip; that while he was in Rich Hill he was receiving layover time pay from Knowles, and that the longer he stayed in Rich Hill the more money Knowles would owe him; and that Tracy was to receive the same amount for the repair of the truck whether it was finished one day or the

next. He further testified that McGuire, the Knowles representive, did not tell him to participate in the repairs, did not tell him to make the trip to Nevada and did not know that he was making the trip; that he had never had any authority or instructions from Knowles to use any automobile other than the tractor-trailer unit furnished.

McGuire testified that the more tonnage hauled by Atlas the more Knowles received in compensation; that Harris was on the Knowles payroll at the time of the collision; that Harris had called him for instructions three times after the unit broke down. McGuire further testified that he told Harris, "to see that the job was done, have it done, yes"; that from the time of the breakdown until the time of the collision he was the only person who had authority as a representative of Knowles to tell Harris what to do; and that he did not authorize Harris to make the trip from Rich Hill to Nevada, and that he knew nothing about Harris making the trip until after the accident.

While Harris was returning from Nevada to Rich Hill in the Tracy automobile transporting the head of the Knowles tractor engine, the collision occurred as a result of which this suit was brought.

Prior to trial, Atlas moved for summary judgment under Rule 56, F.R.Civ. P., 28 U.S.C.A., based upon the pleadings, plaintiff's interrogatories to Atlas and its answers thereto, the lease, affidavits of Tracy and McGuire, and the deposition of Harris. The trial court granted Atlas' motion.

The case proceeded against Harris and Knowles, and at the close of all the evidence, defendant Knowles moved for a directed verdict in its favor, which the court granted. Judgment in its favor was entered accordingly.

It is from these judgments in favor of Atlas and Knowles that the plaintiff here appeals. The case against Harris alone was submitted to the jury and a verdict in favor of the plaintiff and

against Harris in the amount of $85,000 was returned.

The points presented on this appeal are (1) is Knowles liable to plaintiff by reason of the negligence of its employee Harris; and (2) is Atlas liable to plaintiff by reason of the negligence of Harris.

The plaintiff contends that Knowles is liable for the reason that Harris was its servant or employee, and at the time of the accident was acting within the scope of his employment and authority; and that the fact that Harris was using an instrumentality (the Tracy car) different from that furnished (the tractor-trailer unit) by Knowles did not relieve Knowles from liability for Harris' negligence. He further contends that Atlas had the joint right to control Harris and is therefore responsible for torts committed by Harris in the performance of his work for Atlas.

■ In support of these contentions, plaintiff cites several cases from jurisdictions other than from the State of Missouri. In fact, he cites no Missouri cases, and we have found none which lends support to his position. In diversity cases, the federal courts must apply state decisional law in defining and determining state-created rights, obligations, and liabilities. Commissioner of Internal Revenue v. Stern, 1958, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126; Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. This being a diversity case, it is the substantive law of Missouri which is controlling on the issues here raised, and we find that the courts of Missouri have declared the law of that state regarding such issues.

In the case of McCaughen v. Missouri Pac. R. Co., 1925, 274 S.W. 97, 101, decided by the St. Louis Court of Appeals, it appears that one Liese was employed by the defendant as a special officer. His duties consisted of detecting car thieves and otherwise protecting railroad property. Liese usually used a streetcar or went on foot to conduct investigations,

and his employer had not authorized him to use an automobile in carrying out his duties. Without direction or knowledge of his employer, Liese used his own automobile to conduct an investigation, and, during the course of its use struck and injured the plaintiff, who brought suit against Liese and his employer. The Missouri court held:

> "This case differs from the usual case involving an injury by an automobile, where proof is made that the automobile was owned by the master and was operated, at the time of the injury, by the master's regularly employed chauffeur. From such a showing the presumption arises that such chauffeur was within the scope of his employment. * * * In the case at bar, the defendant was not the owner of the automobile. It belonged to * * * Liese, and therefore the presumption of fact that Liese was at the time within the scope of his service and employment does not arise in this case, and the onus fell upon the plaintiff to affirmatively show that Liese operated the automobile, *at the time of the accident, with the knowledge, consent, or authority—express or implied—of the defendant.*" (Emphasis added.)

Again, in Oganaso v. Mellow, 1947, 356 Mo. 228, 201 S.W.2d 365, 368, decided by the Missouri Supreme Court, the plaintiff, a tuckpointer, was on a ladder working on defendant's building. One of the defendant's employees, one Piva, had parked his automobile nearby, but was ordered to move it by defendant's foreman, so that the plaintiff could continue his work. While in the act of moving his car, Piva backed into the ladder on which the plaintiff was working, causing his fall and injury. Plaintiff sought to hold Piva's employer responsible for his (Piva's) negligent act. The court said:

> "An employer is liable for the acts of his employee ' "only when the relation of master and servant is shown to exist between the wrong-

doer and the person sought to be charged with the result of the wrong at the time of the injury, and in respect to the very transaction out of which the injury arose." ' * * *

> "Piva's automobile was not an instrumentality furnished by defendants for use in his employment; Piva's car was his own; he did not use the car in his employment; nor was it shown Piva had an obligation * * * as a part of the contract of hiring * * *.

> "It is our opinion that, when the tort was committed, Piva had temporarily suspended the performance of the duties of his employment; and was * * * acting outside of the scope of his employment at the time."

In Montana v. Nenert, 1950, 226 S.W. 2d 394, 399, decided by the St. Louis Court of Appeals, a partnership operating a garage had employed one Smith to direct the work of setting up a new shop. To enable a salesman to take measurements for installation of materials at the new shop, Smith directed another employee, one Nenert, to drive the salesman to the shop in Smith's automobile. During the course of the trip the plaintiff (salesman) was injured, and brought suit against Nenert, Smith, and the two partners as the masters of Nenert and Smith. In discussing the liability of the two partners for the negligence of Nenert, the court said:

> "The automobile in question was the private property of Smith. The company had no authority over it, and Smith was given no authority, express or implied, to use it in the company's business. Such being the case, no action is maintainable against the master even though the use of the instrumentality was in furtherance of the master's business. The vicarious liability of the master for the tort of his servant should not be extended to include responsibility for injuries sustained through the unauthorized use of such an instrumentality as an auto-

mobile. * * * Liability in such cases should be based only on consent, either express or implied. (cites McCaughen).

"* * * (e)ven if he (Nenert) could be said to be at the time engaged on an errand for the master, no liability could be imposed on the master by reason of the negligent operation of the car, because the use of the car for such purpose was not authorized. (cites McCaughen). The trial court erred in failing and refusing to direct a verdict in favor of defendants (the partners) * *."

See also, the early Missouri case of Farber v. Missouri Pac. Ry. Co., 1898, 116 Mo. 81, 22 S.W. 631, 20 L.R.A. 350.

In the instant case, Harris, at the time of the accident was an employee of Knowles, and it might even be said that he was performing an act for his employer's benefit; however, he was not acting within the scope of his employment, because under Missouri law by using Tracy's automobile without Knowles' knowledge, consent or authority, he had so deviated from the scope of his employment as to relieve Knowles from liability for his negligent acts. We therefore conclude that the trial court properly granted Knowles' motion for a directed verdict in its favor.

On the question of the liability of Atlas for the negligence of Harris, what has heretofore been said by us concerning the liability of Knowles and the cases heretofore cited are equally applicable. It is true that under the lease the tractor-trailer unit with the driver, Harris, were to be used exclusively in the business and service of Atlas, and under the direction and control of Atlas for the purposes for which the unit and the driver had been leased, i. e., the moving, loading and unloading of household goods and furniture. At the time of the accident here involved, the unit was disabled for repairs, and was not engaged in the business of Atlas, and neither was Atlas exercising any control over Har-

ris. It was Knowles' responsibility under the lease to maintain the unit in good condition of repair and service, and Knowles was in the act of performing this obligation at the time Harris' negligent acts occurred. We think it is therefore clear that Harris' negligent acts created no liability as to Atlas. See Stokes v. Four-State Broadcasters, Inc., Mo., 300 S.W.2d 426.

While the propriety of the trial court's action in granting Atlas' motion for summary judgment is not raised or discussed in appellant's brief, we feel constrained to express the view that the trial court properly granted such motion.

Subdivision (c) of Rule 56, F.R.Civ.P., relating to summary judgment, reads in part as follows:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *."

It is noted that there appears to be a slight variance in a few minor details between matters contained in the affidavits of Tracy and McGuire and the deposition of Harris, and the testimony of these parties adduced at the trial. We deem this unimportant for the reason that the trial court had before it in support of Atlas' motion for summary judgment all of the essential facts which the court needed in arriving at its decision. Considering the showing made by Atlas in support of its motion, there was no *genuine* issue as to any *material* fact, and Atlas was entitled to summary judgment. See Durasteel Co. v. Great Lakes Steel Corp., 8 Cir., 1953, 205 F.2d 438; Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 1951, 191 F.2d 881; Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 1951, 189 F.2d 213.

The judgments appealed from are affirmed.