CLARENCE E. PHILBROOK, HENRY ROYALL, G. A. WHITE, JR., AND MRS. LOUISE H. HAYES, INDIVIDUALLY AND AS REPRESENTATIVES OF OTHERS SIMILARLY SITUATED AND LONAS A. WILLIAMS AND ELIZABETH R. WILLIAMS AND JAMES C. BROWN AND DIANE D. BROWN, ADDITIONAL PLAINTIFFS, v. CHAPEL HILL HOUSING AUTHORITY.

(Filed 8 March, 1967.)

**1. Pleadings §§ 2, 12—**
    A cause of action consists of the facts alleged, G.S. 1-122, and the facts alleged, but not the pleaders' conclusions, are deemed admitted where the sufficiency of a complaint is tested by demurrer.

**2. Municipal Corporations § 26.1—**
    The selection of a site for low cost housing rests in the discretion of the housing authority, and its selection of a site may be challenged only for arbitrary or capricious conduct amounting to an abuse of discretion, and its act in selecting a site in a well developed residential area, and not an area in which the existing dwellings are substandard, unsafe, and unsanitary, cannot be considered arbitrary or capricious or an abuse of its discretion.

**3. Same—**
    A housing authority is not required to select a site in a slum district.

**4. Same— Where site for public housing is suitable for that purpose, selection may not be challenged for motives of housing authorities.**
    Plaintiffs sought to restrain defendant housing authority from proceeding to construct low cost housing at a site selected by the authority on the ground that the use of the property for such purpose would depreciate the value of plaintiffs' property. Plaintiffs alleged that the site selected was in a well developed residential district and was selected in order to force racial integration in housing, and to obtain the approval of the Public Housing Administration, and that the authority had thus abdicated the discretion vested in it. *Held:* There being no allegations of fact supporting the conclusion that the site selected was not suitable for use as low rental public housing, plaintiffs may not challenge the selection of the site on the ground of the motives of the authorities.

**5. Same—**

Property owners may not complain that the defendant municipal housing authority approved an option to purchase a site for public housing without a meeting at which a majority of the housing commissioners were present, the housing authority having ratified the acceptance of the option and plaintiffs being in no position to challenge its action, even though the commission itself could set aside unauthorized action or rescind action previously authorized.

**6. Appeal and Error § 2—**

The Supreme Court, in the exercise of its supervisory jurisdiction, may determine the sufficiency of the amended complaint, including matters stricken therefrom in the lower court, as though a demurrer *ore tenus* to the amended complaint in its entirety had been lodged in the Supreme Court, and its ruling that the pleading, thus considered, is insufficient to state a cause of action necessarily includes an affirmance of the order of the lower court sustaining the demurrer *ore tenus* to the amended complaint exclusive of the portions previously stricken therefrom.

APPEAL by plaintiffs from *Hall, J.,* March 21, 1966 Session of ORANGE, docketed and argued as No. 847 at Fall Term 1966.

Original plaintiffs instituted this action for injunctive relief on August 6, 1964, and then obtained an order extending the time for filing complaint. On August 19, 1964, they filed a complaint and an affidavit and motion for a temporary restraining order; and on that date Judge Mallard signed an order temporarily restraining defendant "from exercising the option held by it from M. A. Abernethy to acquire, or acquiring, a 1.6-acre tract of land situate on the east side of North Columbia Street in the Town of Chapel Hill and from using or attempting to use said property for the location of a public housing project," and fixing the time and place for a hearing to determine whether the temporary order should be continued until final determination of the action.

On September 3, 1964, Judge Mallard signed an order which, after reciting a hearing on a motion of defendant to strike portions of said complaint, (1) struck designated portions thereof and allowed plaintiffs twenty days to file an amended complaint, and (2) fixed a new time and place for the hearing to determine whether the restraining order should be continued *pendente lite.*

Plaintiffs filed their amended complaint on September 22, 1964, alleging therein, stated separately, a cause of action and a "further cause of action," referred to hereafter as first cause of action and second cause of action, respectively.

The matters set forth in the following numbered paragraphs (our numbering) are alleged in both causes of action.

1. Defendant was created and organized pursuant to the provisions of G.S. Chapter 157.

2. Plaintiffs reside and own property within the residential area of Chapel Hill known as Noble Heights, a subdivision bounded on the west by Pritchard Avenue, on the north by Noble Street and on the east by North Columbia Street. Noble Street, approximately 100 yards long, "extends only between North Columbia Street and Pritchard Avenue." Neither North Columbia Street nor Pritchard Avenue is a through street, each being a narrow, paved residential street.

3. The property of (original) plaintiffs is located on Noble Street or Pritchard Avenue "within a distance of 200 to 400 feet of the Abernethy property." "(T)he residences of the (original) plaintiffs and practically all of the structures located within and adjacent to this area are privately owned and occupied single-family residential structures, the area being almost exclusively developed and occupied by private homes, with the exception of the Abernethy site."

4. Many others reside and own property within Noble Heights and the area adjacent thereto whose property "is situated in as close proximity to the . . . Abernethy property as is the plaintiffs', and whose interest in this cause is similar to that of the plaintiffs."

Following the matters set forth in the above numbered paragraphs, allegations of the first cause of action continue as set forth below.

Surveys made by or for defendant reveal that the areas of Chapel Hill in which substandard, unsafe and unsanitary dwelling structures were located and where safe and sanitary dwelling accomodations were needed were "in the western and northwestern area of the Town of Chapel Hill, being the areas occupied by members of the Negro race." Subsequent to these survey findings, defendant "selected and approved several sites in the western and northwestern sections of Chapel Hill, which sites consisted of improved and unimproved real estate, the majority of the improved being substandard and unsanitary; that at least two of said sites were selected and approved, each being in the area where the need for adequate housing existed and in areas which would be improved by the construction of public housing facilities."

Paragraphs IX and X, stricken by an order of Judge Mallard dated October 8, 1964, are as follows:

"IX. Plaintiffs are informed and believe, and upon such information and belief, allege that such sites were thereafter submitted for approval to the Public Housing Authority but that said Authority declined to approve said sites and its representatives, after conferring with various persons, groups and organizations in

the community, rejected them and directed that they not be approved since the areas in which they were located were not substantial developed residential areas of the community, would not assure racial integration, and would not serve the ends sought to be accomplished by such various other persons, groups and organizations whose aims were not those of the Housing Authorities Act.

"X.  Plaintiffs are informed and believe, and upon such information and belief, allege that subsequent to the action of the Public Housing Authority, the Chapel Hill Housing Authority then considered sites on the basis of what the Public Housing Authority would approve, rather than those where better housing was needed, such sites being within the well-developed residential areas of Chapel Hill and in those areas occupied by members of the Caucasian race."

The Public Housing Authority "advised that it would approve a site previously selected by the Authority in the western section of Chapel Hill and adjacent thereto if incorporated within the town and if the local Authority would approve, select and acquire the 1.6-acre (Abernethy) tract located on North Columbia Street adjacent to the Noble Heights area . . . and any other site selected through approval of the Public Housing Authority." In June 1964, defendant "agreed to approve, select, and acquire both such sites, which the Public Housing Authority would approve and any other property satisfactory to the Public Housing Authority and which it would approve for the purpose of constructing low rental public housing without consideration or regard for the interests of the community, the character of the area in which such site might be located, the need for low rental public housing in the area, the effect of such selection, acquisition, and development on the social, economic, political or practical interest of the community or its citizens, residents or property owners, the well-being, harmony, welfare, health, happiness of the residents of the area and the well-being and best interests of the tenants and without regard to whether such site were a fit or proper site for the construction of low rental public housing, the sole consideration being the approval or disapproval of the Federal Public Housing Authority, or its representatives or agents."

Pursuant to the blanket authorization to acquire sites which the Public Housing Authority would approve, including the Abernethy site, defendant, during the month of July 1964, "procured from one M. A. Abernethy an option to purchase the 1.6-acre tract located on North Columbia Street at the intersection of Noble Street adjacent to the Noble Heights area as hereinbefore described, for the

purpose of constructing thereon low rental public housing, although it would not eliminate a single occupied slum structure."

Defendant selected and has attempted to acquire the Abernethy tract wholly by reason of the external pressures applied by the Public Housing Authority and by persons, groups and organizations *"desirous of integrating the races in housing within the corporate limits of the Town of Chapel Hill,"* and not on account of its being a proper location for public housing. Defendant has heretofore approved and abandoned "many previous prospective sites." Although the Abernethy site involved "is an insubstantial portion of the over-all public housing project proposed for Chapel Hill and is not connected with any other prospective site," the Public Housing Authority and defendant "have taken the position that unless this site is acquired and developed, there will be no public housing in the Chapel Hill community."

The Abernethy site consists primarily of vacant land in a well developed residential neighborhood in which the structures are substantial, safe, sanitary and well above minimum standards. Location of low cost public housing apartment units in this "already densely populated" area would cause congestion, increase traffic hazards and in general "greatly devalue" the surrounding property. Within a few hundred yards, with different access, areas are available to defendant where there is a need for adequate housing facilities; and in these areas construction of low cost public housing apartment units will enhance the value of the surrounding property. Defendant's selection of the Abernethy site is arbitrary, capricious and constitutes an abuse of discretion.

Paragraph XVIII, stricken by an order of Judge Mallard dated November 4, 1964, is as follows:

"That plaintiffs are informed and believe that the actions of the Public Housing Authority in directing the selection of sites through approval or disapproval has been controlled, influenced and directed on the basis of integration of the races rather than a desire to provide low rental public housing for those in need and/or the elimination of the slum areas of the community."

The Abernethy property is the only site defendant "purports to select and acquire which would have the effect of placing low rental public housing *in an area occupied by members of the Caucasian race and in which enforced integration of the races would occur and* in an area which would be down graded or depreciated in value through the construction of such facilities, or in which the existing structures are adequate, safe, sanitary and equal to or superior to those to be provided by public housing."

Defendant "persists in its attempts to acquire the Abernethy

property solely by reason of the dictates of the Public Housing Authority *and the pressures by those persons desiring to convert public housing into an instrument of integration of the races* and not the purposes for which it is properly used of improving the standards of an area and affording decent, safe and sanitary housing accommodations for persons of low income." Defendant has abdicated the discretion vested in it by law, basing its determination of sites "on *race factors and* other extraneous factors" and not on the basis of whether it is a proper and suitable site for public housing.

The construction of low rental public housing apartments on the Abernethy property will substantially change the character of the neighborhood, render plaintiffs' properties less desirable for residential purposes, depreciate the value of plaintiffs' properties, etc., and thereby cause plaintiffs to suffer irreparable injury for which they have no adequate remedy at law.

Following the matters set forth in the above numbered paragraphs, allegations of the second cause of action continue as set forth below.

In July 1964, defendant procured from M. A. Abernethy an option to purchase said 1.6-acre tract. Prior thereto, two members of defendant had resigned and have not, since June 1964, acted as members of defendant. A third member of defendant, who has stated his intention to resign, was "without the continental United States" when the option was obtained. Under G.S. Chapter 157, defendant consists of five members; and no meeting, with a quorum present, was held to approve the option price, to authorize the exercise of the option or to acquire the property pursuant to the option. The agents of defendant, without authority, "have arbitrarily proceeded to attempt to exercise the option and acquire the Abernethy property." There being no authorization therefor, said action was arbitrary and capricious.

Allegations in the second cause of action, as to irreparable injury for which there is no adequate remedy at law, are substantially the same as those in the first cause of action.

Upon motion of defendant, Judge Mallard struck from the complaint Paragraphs IX, X and XVIII and the phrases italicized above from Paragraphs XIV, XIX, XXI and XXII. Plaintiffs excepted.

By order of October 8, 1964, Judge Mallard *vacated and dissolved* the portion of the temporary restraining order of August 19, 1964, that enjoined defendant from exercising the option, but *continued until the final hearing* the portion of said restraining order that enjoined the defendant from "using or attempting to use" said property. Plaintiffs excepted to the first part of the order; defendant to the latter.

Defendant filed answer on November 6, 1964. The record contains an "ORDER OF MISTRIAL" entered by Judge Braswell at March Civil Session 1965. This order indicates that, after the jury had been selected and impaneled, the presiding judge, in the exercise of his discretion and on grounds not pertinent to this appeal, withdrew a juror and ordered a mistrial, continuing in effect the temporary restraining order of August 19, 1964, as modified by the order of October 8, 1964. By order of September 27, 1965, Judge Johnson, in accordance with their petitions, ordered that additional plaintiffs be made parties in this cause; and, as permitted by Judge Johnson's order, these additional plaintiffs filed complaints in which they adopted as their own the amended complaint of original plaintiffs. Defendant answered these complaints by adopting in respect of the additional plaintiffs its answer to the amended complaint.

Upon the call of the case for trial at March 21, 1966 Session, defendant, through counsel, demurred *ore tenus* "as to the first and second causes of action on the grounds that the complaint does not contain facts sufficient to constitute a cause of action against the defendant." The court, being "of the opinion that the demurrer should be sustained," entered the following order:

"Now therefore, IT IS ORDERED that the demurrer *ore tenus* be and the same is hereby sustained.

"IT IS FURTHER ORDERED that the restraining order heretofore entered, dated the 8th day of October, 1964 by Judge Mallard is hereby continued and shall be in full force and effect pending appeal to the Supreme Court and the ultimate determination of this cause."

Plaintiffs excepted to the court's ruling and judgment and appealed therefrom.

*Haywood, Denny & Miller for plaintiff appellants.*
*James C. Harper for defendant appellee.*

BOBBITT, J.   Plaintiffs base their alleged right to maintain this action solely on their status as residents and property owners. Their alleged grievance is that the construction by defendant of low rental public housing apartments on the Abernethy tract will seriously and adversely affect the desirability of their property for residential use and substantially depreciate its value.

The cause of action consists of the facts alleged. G.S. 1-122; *Lassiter v. R. R.*, 136 N.C. 89, 48 S.E. 642. The facts alleged, but not the pleader's conclusions, are deemed admitted where the sufficiency of a complaint is tested by demurrer. *Stamey v. Membership Corp.*, 247 N.C. 640, 101 S.E. 2d 814; 3 Strong, N. C. Index, Pleadings § 12. The facts considered below are *alleged* by plaintiffs.

Defendant was created and organized pursuant to the provisions of G.S. Chapter 157, Article 1, entitled "Housing Authorities Law." Hence, all housing projects of defendant are "subject to the planning, zoning, sanitary and building laws, ordinances and regulations applicable to the locality in which the housing project is situated." G.S. 157-13. Plaintiffs do not allege or contend that the contemplated construction of low rental public housing apartment units on the Abernethy tract would violate any zoning or other governmental regulation applicable to the locality. Nor do they allege or suggest that the Abernethy tract is subject to any covenant imposed by deed or contract purporting to prevent its use for the contemplated purpose.

In view of the references to racial integration in plaintiffs' stricken allegations, it is noted that a zoning ordinance purporting to restrict the occupancy and use of property solely on the basis of race is unconstitutional and void. *Clinard v. Winston-Salem,* 217 N.C. 119, 6 S.E. 2d 867, 126 A.L.R. 634 (1940). A covenant in a deed or contract purporting to impose such a restriction is not enforceable in equity by injunction. *Shelley v. Kraemer,* 334 U.S. 1, 92 L. Ed. 1161, 68 S. Ct. 836, 3 A.L.R. 2d 441. A breach thereof is not ground for the recovery of damages in an action at law. *Barrows v. Jackson,* 346 U.S. 249, 97 L. Ed. 1586, 73 S. Ct. 1031.

Under the facts alleged, plaintiffs would have no right to restrain an individual or private corporation from acquiring the Abernethy tract and constructing thereon low rental apartment units.

The constitutionality of said "Housing Authorities Law" was upheld when challenged by taxpayers in *Wells v. Housing Authority,* 213 N.C. 744, 197 S.E. 693, and in *Cox v. Kinston,* 217 N.C. 391, 8 S.E. 2d 252, and in *Mallard v. Housing Authority,* 221 N.C. 334, 20 S.E. 2d 281. No provision of said "Housing Authorities Law" is challenged by plaintiffs as being unconstitutional or otherwise void. Plaintiffs assert defendant's selection of the Abernethy property as a site for the construction of low rental housing apartments is "arbitrary" and "capricious" and constitutes "an abuse of discretion" by defendant.

"In the selection of a location for a housing project as authorized under the Housing Authorities Law, the project may be built either in a slum area which has been cleared, or upon other suitable site. The housing authority is given wide discretion in the selection and location of a site for such project." *In re Housing Authority,* 233 N.C. 649, 660, 65 S.E. 2d 761, 769, and cases cited. "There is nothing in the law in this jurisdiction that requires housing projects to be located only where slum districts exist." *Housing Authority v. Wooten,* 257 N.C. 358, 367, 126 S.E. 2d 101, 107. Defendant's pri-

mary objective is to make low rental public housing available to persons who are now living in "substandard, unsafe and unsanitary dwelling structures."

"In determining what property is necessary for a public housing site, a broad discretion is vested by statute in housing authority commissioners, to whom the power of eminent domain is delegated. G.S. 157-11; G.S. 157-50; G.S. 40-37. Indeed, so extensive is this discretionary power of housing commissioners that ordinarily the selection of a project site may become an issuable question, determinable by the court, on nothing short of allegations charging arbitrary or capricious conduct amounting to abuse of discretion." *In re Housing Authority*, 235 N.C. 463, 70 S.E. 2d 500. In that case a jury found the selection of a part of the campus of Livingstone College as a site for a housing project to be arbitrary and capricious, considering the present and future needs of the college and the availability of other suitable sites nearby. This Court held there was ample evidence to warrant submission of the issue, and to support the verdict.

Each of the three cases last cited was a proceeding by a Housing Authority, in the exercise of the power of eminent domain conferred by G.S. 157-11, to condemn land for use as a site for the construction of low rental public housing apartments. In the present action, defendant (Housing Authority) does not seek to condemn or otherwise acquire any property owned by any of the plaintiffs. There is no controversy between it and the owner of the Abernethy tract. It is not alleged or contended that the Abernethy tract is not suitable for use as a site for low rental public housing. The gist of the complaint is that plaintiffs do not want low rental public housing apartments in close proximity to their residences and property. While plaintiffs' apprehensions are understandable, the complaint alleges no facts sufficient to show the selection of the Abernethy tract was "arbitrary" or "capricious" or "an abuse of discretion." Defendant's failure to select a site in an area in which the present dwelling structures are substandard, unsafe and unsanitary cannot be considered arbitrary or capricious or an abuse of discretion.

We have not overlooked plaintiffs' contention that the Abernethy property was selected in order to meet the requirements or approval of the United States Public Housing Administration, created and established pursuant to U.S.C.A. Title 42, Chapter 8. Plaintiffs' allegations imply that defendant depends wholly or largely on federal financial assistance for the acquisition of land and the construction of public housing thereon. There being no factual allegations sufficient to show the Abernethy tract is not suitable for use as a site for low rental public housing, whether defend-

ant was induced to select it to meet the requirements or approval of the Public Housing Administration is immaterial. If suitable for the contemplated use, the selection thereof is not subject to successful challenge by searching the motives either of defendant or of the Public Housing Administration. *Cf. Clark's v. West,* 268 N.C. 527, 151 S.E. 2d 5.

With reference to the alleged second cause of action: Defendant's exercise of the option, if not properly authorized at a duly constituted meeting of the Commission, is ratified by defendant's pleadings and position in this action. Assuming *the Commission* could set aside unauthorized action or rescind previously authorized action, the internal affairs and functioning of the Commission are not subject to challenge by plaintiffs. *Cf. Carringer v. Alverson,* 254 N.C. 204, 118 S.E. 2d 408.

It is unnecessary to pass upon whether Judge Mallard erred in any of his rulings with reference to striking portions of the amended complaint. In our view, the amended complaint fails to state facts sufficient to constitute a cause of action either including or excluding these allegations. Accordingly, exercising our supervisory jurisdiction (N. C. Const. Art. IV, Sec. 10), we consider the case as if a demurrer *ore tenus* to the amended complaint in its entirety had been lodged in this Court; and, when so considered, such demurrer is sustained. This ruling, of course, necessarily includes an affirmance of Judge Hall's order sustaining the demurrer *ore tenus* to the amended complaint exclusive of the portions previously stricken therefrom.

Affirmed.