BROADUS E. SINGLETON v. JACK STEWART, CHAIRMAN; J. DAVID ARMSTRONG, VICE-CHAIRMAN; P. F. DESAIX, ROBERT S. WEBB, ROBERT V. MATHISON, BOARD MEMBERS OF ASHEVILLE HOUSING AUTHORITY AND THE ASHEVILLE HOUSING AUTHORITY

No. 86

(Filed 9 February 1972)

1. **Rules of Civil Procedure § 56— motion for summary judgment — when made**

   The broad statutory limitation that the motion for summary judgment may be made "at any time" allows the motion to be made after responsive pleadings have been filed or before filing of responsive pleadings.

2. **Rules of Civil Procedure § 56— motion for summary judgment — what court may consider**

   When a motion for summary judgment comes on for hearing, the court may consider pleadings, affidavits meeting the requirements of Rule 56(e), depositions, answers to interrogatories, admissions, oral testimony, documentary materials, facts which are subject to judicial notice and such presumptions as would be available upon trial.

3. **Rules of Civil Procedure § 56— summary judgment — issues of fact**

   In ruling on a motion for summary judgment the court does not resolve issues of fact and must deny the motion if there is any issue of genuine material fact.

4. **Rules of Civil Procedure § 56— motion for summary judgment — burden of proof**

   The party moving for summary judgment has the burden of clearly establishing the lack of a triable issue of fact by the record properly before the court; his papers are carefully scrutinized and those of the opposing party are indulgently regarded.

Singleton v. Stewart

5. **Appeal and Error § 24— grouping of exceptions — assignments of error**

Supreme Court Rule 19(3) requires that the appellant group his exceptions and state clearly and briefly his individual assignments of error.

6. **Municipal Corporations § 4— low-rent housing — site selection by housing authority**

A housing authority is by statute given wide discretionary power in the selection of a site for a low-rent housing project, and the exercise of this discretion may not ordinarily become an issuable question, determinable by the court, except upon allegations of arbitrary and capricious conduct amounting to an abuse of discretion.

7. **Municipal Corporations § 4— low-rent housing — site selection by housing authority**

Plaintiff failed to raise a genuine issue of triable fact as to whether defendant housing authority acted arbitrarily, capriciously and in abuse of its discretion in the selection of a site for a low-rent housing project, where plaintiff offered no evidence to support his allegations that the land is unsuitable for that purpose because it is not accessible to public transportation, public recreation areas, commercial areas and schools, and for other reasons, and defendant housing authority offered affidavits and exhibits showing that the site was selected and approved by the proper authorities after a duly advertised public hearing.

8. **Rules of Civil Procedure § 56— motion for summary judgment — affidavit — personal knowledge of affiant — legal conclusion of affiant**

In ruling on a motion for summary judgment, the trial court could not consider portions of plaintiff's affidavit not based on the affiant's personal knowledge and a paragraph of the affidavit stating the affiant's legal conclusion.

9. **Municipal Corporations § 4— low-rent housing — purchase price of land**

Plaintiff failed to raise a material issue on the question of whether defendant housing authority acted arbitrarily and capriciously and in abuse of its discretion by agreeing to pay an excessive purchase price for the land in controversy.

10. **Municipal Corporations § 4— housing authority — site selection — presumption of good faith**

It is presumed that a housing authority acted in good faith and in accord with the spirit and purpose of the law in selecting a site for a low-rent housing project.

11. **Municipal Corporations § 4— low-rent housing — portion of property subject to railroad easement**

Property is not unsuitable as a matter of law for use as a site for a low-rent housing project because of an existing easement in favor of a railroad on a portion of the property which will not be used for construction of housing units.

**12. Municipal Corporations § 4— low-rent housing project — violation of local and federal regulations**

Plaintiff presented no genuine issue of triable fact as to whether local and federal regulations were violated by defendant housing authority's plans for ingress to and egress from a row-rent housing project or by its plans for the project's streets, drainage, water and sewage disposal, and general topographical layout.

**13. Rules of Civil Procedure § 56— summary judgment — findings of fact**

Although the trial judge was not required to make and enter into the record detailed findings of fact in ruling on a motion for summary judgment, it was not error for the court to do so, since there is plenary evidence in the record to support his findings.

APPEAL by plaintiff from *Martin, J.,* April 1971 Non-jury Session of BUNCOMBE Superior Court. This case was docketed and argued as No. 156 at the Fall Term 1971.

Plaintiff, a citizen and taxpayer of the City of Asheville, on 11 September 1970 instituted this action against the Asheville Housing Authority and the individual members of the Authority. By this action plaintiff seeks to enjoin defendants from constructing low-rent housing project NC-7-11; to require defendants to abide by the laws of North Carolina and the ordinances of the City of Asheville; to restrain defendants from purchasing from the Asheville Oil Company, Inc., and Sea-Nic Enterprises, Inc., certain real property described as Lots Nos. 109, 110, 144, 145 and 145-1/4, Sheet 9, Ward 7, containing approximately 6.9 acres, and lots Nos. 94 and 108, Sheet 9, Ward 7, containing approximately 9.1 acres; to have the court order a grand jury investigation of defendants' activities; and to order a survey of the above described property.

Defendants filed, in the alternative, a motion to dismiss and a motion to strike certain allegations of the complaint. On 7 October 1970 Judge Hasty entered an order allowing plaintiff 30 days in which to amend his complaint, and allowing plaintiff to inspect defendants' file relative to Project NC-7-11. The judge held defendants' motion to dismiss in abeyance.

On 28 October 1970 plaintiff filed an amended complaint, attaching portions of the Asheville Zoning Code and the Asheville City Ordinances as exhibits.

This matter came on to be heard before Judge Martin at the April 1971 non-jury Session of Superior Court upon the duly

filed motions for summary judgment by defendants and plaintiff. After reviewing the pleadings, the supporting affidavits of the plaintiff and the defendants, and reviewing other evidence submitted, Judge Martin, on 16 April 1971, after finding facts, denied plaintiff's motion for summary judgment and allowed defendants' motion for summary judgment. Plaintiff appealed.

This appeal is before this Court under our General Referral Order effective 1 August 1970.

*Cecil C. Jackson, Jr., for plaintiff appellant.*

*William C. Moore; Williams, Morris & Golding for defendant appellees.*

BRANCH, Justice.

Rule 56 of Ch. 1A-1 of the General Statutes in part provides:

(b) *For defending party.* A party against whom a claim, counterclaim, or crossclaim is asserted or a declaratory judgment is sought, may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

(c) *Motion and proceedings thereon.*—The motion shall be served at least ten days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. . . .

(e) *Form of affidavits; further testimony; defense required.*—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to inter-

rogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

Federal Rule 56 is substantially the same as our Rule 56, and we therefore look to the Federal decisions for guidance in applying our rule.

**[1-3]**  The broad statutory limitation that the motion for summary be made "at any time" allows the motion to be made after responsive pleadings have been filed or *before filing of responsive pleadings. Chan Wing Cheung v. Hamilton* (1st Cir., 1962), 298 F. 2d 459; *Hartmann v. Time, Inc.*, (3rd Cir., 1947), 166 F. 2d 127; *United States v. William S. Gray & Co.*, (SDNY, 1945), 59 F. Supp. 665; *Lindsey v. Leavy* (9th Cir., 1945), 149 F. 2d 899. When the motion comes on for hearing, the court may consider pleadings, affidavits meeting the requirements of Rule 56(e), depositions, answers to interrogatories, admissions, oral testimony, and documentary materials; and the court may also consider facts which are subject to judicial notice and such presumptions as would be available upon trial. Rule 56; *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823; 6 Moore, Federal Practice § 56.11[10], at p. 2209 (2d ed. 1971) ; *Jameson v. Jameson* (D.C. Cir. 1949), 176 F. 2d 58. The use of these materials upon the hearing of the motion for summary judgment makes it clear that the real purpose of summary judgment is to go beyond or to pierce the pleadings and determine whether there is a genuine issue of material fact. *Kessing v. Mortgage Corp., supra; William J. Kelly Co. v. Reconstruction Finance Corp.* (1st Cir., 1949), 172 F. 2d 865; *Securities Exchange Commission v. Payne* (SDNY, 1940), 35 F. Supp. 873; *United States v. 31 Photographs* (SDNY, 1957), 156 F. Supp. 350; *Cunningham v. Securities Investment Co. of St. Louis* (5th Cir., 1960), 278 F. 2d 600. It should be emphasized that in ruling on a motion for summary judgment the court does not resolve issues of fact and must deny the motion if there is any issue of genuine material fact. *Kessing v. Mortgage Corp., supra; United States v. Kansas Gas & Electric Co.*, (10th Cir., 1961),

287 F. 2d 601; *H. K. Ferguson Co. v. Nickel Processing Corp. of New York* (SDNY, 1963), 33 Federal Rules Decisions 268; *Hirsh v. Archer-Daniels-Midland Co.* (2d Cir., 1958), 258 F. 2d 44. The motion may only be granted where there is no such issue and the moving party is entitled to judgment as a matter of law. 6 Moore, Federal Practice, § 56.15 at p. 2281, 2282 (2d ed. 1971); *Chesapeake & Ohio Ry. Co. v. International Harvester Co.* (7th Cir., 1969), 272 F. 2d 139; *Riedel v. Atlas Van Lines, Inc.,* (8th Cir., 1959), 272 F. 2d 901; *Gold Fuel Service, Inc. v. Esso Standard Oil Co.,* (DNJ, 1961), 195 F. Supp. 85.

[4] "The party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of fact by the record properly before the court. His papers are carefully scrutinized; and those of the opposing party are on the whole indulgently regarded." 6 Moore, Federal Practice, § 56.15[8], at p. 2439 (2d ed. 1971). See also *Kessing v. Mortgage Corp., supra;* Gordon, "The New Summary Judgment Rule in North Carolina," 5 Wake Forest Intramural Law Review 94.

[5] Plaintiff's case on appeal presents 34 assignments of error which fail to "pin-point" the question for decision. Rule 19(3) of the Rules of Practice of this Court requires that the appellant group his exceptions and state clearly and briefly his individual assignments of error. *Gilbert v. Moore,* 268 N.C. 679, 151 S.E. 2d 577; *Long v. Honeycutt,* 268 N.C. 33, 149 S.E. 2d 579. Appellant neglected to do this. Therefore, in order to apply the above-stated and other pertinent principles of law to the facts of this case, we have categorically grouped plaintiff's allegations and evidence and defendants' evidence for purpose of considering the sole question presented by this appeal, i.e., did the trial judge correctly allow defendants' motion for summary judgment?

Plaintiff contends that defendants' attempted purchase of the property described in the options was arbitrary, capricious and in abuse of their discretion because of the location of the property. In support of this contention he alleges that more suitable land could be obtained for less consideration; that the land is not accessible to public transportation facilities, public recreation areas, commercial areas, and schools; that defendants misrepresented the location of schools to the Department of Housing and Urban Development, and generally that the land

is located in an otherwise undesirable commercial and industrial section of the city.

Plaintiff offered no evidence to support these allegations and this general contention.

[6] A housing authority is by statute given wide discretionary power in the selection of a site for a low-rent housing project, and the exercise of this discretionary power may not ordinarily become an issuable question, determinable by the court, except upon allegations of arbitrary and capricious conduct amounting to an abuse of discretion. *Housing Authority v. Wooten,* 257 N.C. 358, 126 S.E. 2d 101; *Philbrook v. Housing Authority,* 269 N.C. 598, 153 S.E. 2d 153.

Defendants offered evidence by affidavit, in proper form, and by exhibits which tended to show that the site plan had been submitted to and approved by the Asheville Planning and Zoning Commission; that the City Council of Asheville, after holding a duly advertised public hearing, accepted and approved the site plan; that the site plan was submitted to and approved by the Department of Housing and Urban Development.

[7] Defendants offered an affidavit based on the personal knowledge of the affiant and other exhibits, all of which tended to refute plaintiff's allegations that defendants acted capriciously, arbitrarily and in abuse of their discretion in selecting the location for the low-rent housing project. Plaintiff offered no evidentiary response which would raise an issue for trial.

A number of plaintiff's allegations in the Amended Complaint are directed to the contention that defendants arbitrarily and capriciously abused their discretion by contracting to pay an amount in excess of the appraised value of the property. A typical allegation of this contention is as follows:

(14) That the defendants as required by law could not pay over and above the appraisal price for said real estate and knew or should have known the same because of the receipt of an appraisal report from Allen Butterworth dated November 17, 1969; and although the defendants were in receipt of said appraisal report entered into a contract accepted December 12, 1969, by their executive director agreeing to pay an amount in excess of the appraisal price; that at the time the defendants agreed to

pay an unlawful sum in excess of the appraisal price of $35,000.00, the defendants were in receipt and had knowledge of an estimate as follows: That it would cost $380.00 to clear the land for the said project; a cost of $4,740.00 for stripping the topsoil; a cost of $37,200.00 for grading the material left on the site; and the sum of $37,500.00 for the cost of filling the rough grade from materials off the site location; and that the cost for providing sanitary sewer would require the sum of $23,715.00; and the cost of $42,618.00 for providing storm sewers; and that the total cost of said land before any improvements are added for public housing would be $187,403.00.

The only evidence offered by plaintiff to support this contention is found in his own affidavit, to wit:

(3) . . . that the plaintiff is advised and informed that the seller never released the purchaser on the first contract, which is still a binding agreement obligating the defendants to pay the original purchase price of $37,500.

(5) That under the terms of the contract the seller must give notice to terminate the same and therefore the original contract dated December 12, 1969, is still binding.

[8] The above quoted portions of the affidavit could not have been properly considered by the trial judge in ruling on the motion for summary judgment. The evidence is incompetent because the portion of Paragraph 3 which plaintiff relied upon was not made on the affiant's personal knowledge, and Paragraph 5 of the affidavit was simply affiant's legal conclusion and not a fact "as would be admissible in evidence." Rule 56(e) of Ch. 1A-1 of the General Statutes; *Jameson v. Jameson, supra.*

On the other hand, defendants submitted an affidavit, proper in form, and exhibits which tended to show that the option dated 12 December 1969 had expired without being exercised; that the grantors had returned to defendants the full amount paid as purchase price for the option ($3,750) and had executed written releases discharging defendants from any claims or obligations incurred by them under that option. Plaintiff alleged that the appraised value of the property was $35,000, and defendants showed by proper affidavit that a new option to purchase the same property from the same parties for the sum of $35,000 had been obtained by defendants.

Defendants also offered exhibits tending to show that the Department of Housing and Urban Development approved the topographical and drainage plans for the lands as a construction expense rather than a purchase price expense.

[9] Thus plaintiff has again failed to raise a material issue on the question of whether defendants acted arbitrarily and capriciously and in abuse of their discretion by agreeing to pay an excessive purchase price for the land in controversy.

Plaintiff next argues that defendants contracted to purchase property from sellers who could not convey an absolute and fee simple title. The allegations in the Amended Complaint refer to the option dated 12 December 1969, which had expired prior to the filing of the Amended Complaint; however, by examining the prayer for relief and the affidavit filed by plaintiff we discover that this argument refers to an easement held by Southern Railway over a portion of the property in controversy.

Again, in support of this contention plaintiff's sole proof is his own affidavit, which contains the following:

> (2) That the title opinion of William C. Moore dated March 26, 1971, for the Housing Authority of the City of Asheville reflects and excepts Tax Lot 110, which is admitted therein the defendants cannot obtain a good, indefeasible title of all the property in question.

> (4) That the purchase price of $35,000.00, if there is a release of the original contract is still excessive and the defendants admitted that they do not get absolute title at that price and that the appraisal report obtained by the defendants would assume that the sellers, Asheville Oil Company and Sea-Nic Enterprises, Inc., have absolute and thus marketable title.

Defendants' evidence includes the certificate of title of William C. Moore, a practicing attorney of Buncombe County, showing an easement over a portion of the land in favor of Southern Railway. Defendants also offered by affidavit and exhibits evidence that no housing units will be constructed on the land subject to the easement. Defendants' Exhibit G, a letter from the Regional Office of the Department of Housing and Urban Development, contained the following statement: "The

General Conditions of your intermediate Specifications for the construction of the above-identified low-rent housing project have been reviewed for legal sufficiency and are hereby approved."

[10, 11]  Since defendants admit the existence of the easement, there is no issue of fact. There remains only a question of law as to whether defendants' act in purchasing the property amounted to an arbitrary and capricious abuse of discretion. Defendants' primary objective is to make low-rent public housing available to persons now living in sub-standard dwellings. *Philbrook v. Housing Authority, supra.* It is presumed that defendants acted in good faith and in accord with the spirit and purpose of the law in selecting the project site. *In re Housing Authority,* 233 N.C. 649, 65 S.E. 2d 761. We find nothing in the record which indicates, as a matter of law, that the property in controversy is unsuitable as a site for a low-rent housing project because of an existng easement on that portion of the property which will not be used for construction of housing units.

[12]  Plaintiff next contends that he should be granted relief because the ingress and egress to the project, the streets, the drainage, the availability of water and sewage disposal, and the general topographical layout as shown on defendants' project plans are inadequate and are in violation of local and federal regulations. Plaintiff's evidence offered in support of these contentions consists of his affidavit and a portion of the City Code which was attached to his complaint. The pertinent portion of the affidavit states:

> (6)  That the plaintiff is advised, informed and so alleges that the defendants have failed to obtain a permit or easement to place and run various lines, drainage ditches and other construction items as shown on the plans.

Again, this portion of plaintiff's affidavit is without force since the offered statement is not made on affiant's personal knowledge. Rule 56(e) ; *Jameson v. Jameson, supra.*

Plaintiff specifically argues that the plans violate the requirements of the City Code providing that streets of the type proposed in the plans shall be 50 feet in width "measured from lot line to lot line." Apparently plaintiff interprets this wording to require a paved road 50 feet wide, rather than a right-of-way of 50 feet. Thus it seems that his own exhibit, defeats this argu-

ment. In connection with these allegations the record shows that defendants offered the affidavit of Charles Adams Clark, who stated on personal knowledge that the site plan for the project fully complies with the zoning ordinances of the City of Asheville, and that all streets in the project will be constructed upon rights-of-way of not less than 50 feet in width.

Defendants by affidavit and exhibits show that the Director of Public Works of the City of Asheville and the engineer for the Asheville City Water Department examined the site plan for the project; that both of these officials recommended certain changes in the site plan; that the Asheville Planning and Zoning Commission approved the recommended changes, and on 4 March 1971 the Asheville City Council, after holding a duly advertised public hearing amended the site plan so as to incorporate the recommended changes. The Department of Housing and Urban Development subsequently approved and accepted the site plan as amended.

Thus defendants' evidence effectively pierced plaintiff's pleadings so that these allegations present no genuine issue of fact.

[13] We do not think that the trial judge was required to make and enter into the record detailed findings of fact in ruling on this motion for summary judgment. However, the action of the careful and able trial judge was proper and was without error, since there is plenary evidence in the record to support his findings.

A careful examination of the entire record discloses that no genuine issue as to any material fact exists between the parties to this action. The judgment allowing defendants' motion for summary judgment and denying plaintiff's motion for summary judgment is

Affirmed.